575 A.2d 164

**Harry G. BANZHOFF, III, Appellant,**

v.

**DAUPHIN COUNTY BOARD OF ASSESSMENT APPEALS, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 24, 1989.

Decided May 15, 1990.

Harry G. Banzhoff, III, pro se.

Carl G. Wass, Caldwell & Kearns, Harrisburg, for appellee.

Before CRAIG and BARRY, JJ., and BLATT, Senior Judge.

## OPINION

BARRY, Judge.

Harry G. Banzoff, appellant, purchased two adjoining tracts of land in the city of Harrisburg on March 27, 1985, for the sum of $26,000. Each tract contains a two and one-half story brick dwelling house with a common wall between the houses. When the property was purchased the entire structure (i.e. the two connected houses) was being used as a twelve room boarding house. After purchasing the property appellant rehabilitated the property and converted it into two residential units.

At the time of purchase, the existing assessment on the property was $4,053. Prior to 1985 Dauphin County had not conducted a county-wide assessment since 1972. The $4,053 figure therefore represented the 1972 market value multiplied by the ratio used for assessment purposes which was 30%. In 1985 the Dauphin County Commissioners abandoned the 30% ratio and adopted a 100% ratio. This brought appellant's assessment figure to approximately $13,500. The Commissioners then performed a statistical updating by doubling the 1972 assessments for the entire county. The reasoning behind this computation was that the statistics used by the State Tax Equalization Board for 1985 revealed that the 1972 market value was 50% of the 1985 market value.[1] The doubling of appellant's 1972 assessment resulted in a base year assessment in 1985 of $27,000. Appellant received notice of these revisions.

1. Both the majority and dissenting opinions in *Croasdale v. Dauphin County Board of Assessment Appeals*, 89 Pa.Commonwealth Ct. 409, 492 A.2d 793 (1985), view the Dauphin County reassessment schemes with some skepticism, but there has been up to this point no judicial decision that the assessments are patently invalid.

At the time appellant obtained the necessary building permits to perform the renovation work, which was shortly after the date of purchase, he elected to participate in a tax abatement program administered by Dauphin County for the city of Harrisburg pursuant to the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (Improvement Act).[2] Under the program the increased assessment resulting from renovations to a building in the city is not immediately taxed. In the first year of the increased assessment 100% of the increase is exempt from taxation. In the next five years the exemption decreases at the rate of 20% each year. At the end of five years the entire amount of the increased assessment is subject to tax.

The Dauphin County assessors evaluated the improvements which appellant made to his property in two phases. Work on one of the two units was completed and the unit was occupied in 1985. The assessors determined that the value *of the renovation* was $31,700. Appellant received no notice of the increase in 1985 since none of the increase was taxable in 1986. In 1986 appellant received notice that his assessment for the 1987 tax year was $33,300, an increase of $6,300, or approximately 20% of $31,700.

Renovation work on the second unit was completed early in 1987. The assessors determined the value *of that renovation* to be $54,400. No increase in the assessment due to the second phase of work occurred in 1987. Appellant received notice that for the 1988 tax year his assessment would be $50,500, which included the $33,300 from the previous year, an additional $6300 for the first phase, and $10,900 which is approximately 20% of $54,400. At this point appellant appealed the assessment to the Dauphin

**2.** Act of July 9, 1971, P.L. 206, *as amended,* 72 P.S. §§ 4711–101— 4711–305. This act applies to residential property, including multifamily dwellings, while the Local Economic Revitalization Tax Assistance Act (LERTA), Act of December 1, 1977, P.L. 237 *as amended,* 72 P.S. §§ 4722–4727, applies to industrial, commercial, and other business property. 72 P.S. §§ 4711–102 and 4711–201; 72 P.S. § 4723. Both parties argue as if LERTA applies but for the purposes of the arguments, there is no substantive difference between the statutes, which provide for similar tax abatement programs. We will therefore treat the arguments as if made under the correct statute.

County Board of Assessment Appeals (Board), appellee. The appeal was rejected. A further appeal was taken to the Court of Common Pleas of Dauphin County where a de novo trial was conducted. The trial court subsequently affirmed the Board.

According to the Board's calculations, the final assessment at the conclusion of appellant's participation in the tax abatement program would be $113,100. This is the sum of the base year assessment, $27,000, and the value of the two phases of renovation, $31,700 and $54,400. At the time of the hearings before the trial court near the end of 1988, William Collins, who is the chief assessor for the county and the Board's appraisal expert, testified that his estimate of the market value of the property was $142,500. At the time of the hearings the common level ratio for Dauphin County was 79.5%. Multiplying the board's market value by the common level ratio yields approximately $113,288, a figure consistent with the previously calculated $113,100.

■ Appellant, who is not represented by counsel, makes several arguments. First he argues that he did not receive notice of the reassessment as required under Section 6 of the Improvement Act, 72 P.S. § 4711-205 [3], which states that the assessment agency shall notify the taxpayer of the reassessment and the amounts of the assessment eligible for exemption. The Board responds by arguing that appellant knew that he was enrolled in the tax abatement program and received notice of the yearly increase under the program. The Board argues further that notification of the fractional portion of the increased value of the property subject to taxation also serves as notice that the remainder of the increased value is exempt from taxation. We do not agree. The language of the act clearly requires notice of the amount of the assessment eligible for exemption in addition to the reassessment. Appellant did not receive notice of the exemption schedule nor the ultimate reassessment of $113,100 until he contacted the assessor's office after receiving the notice for the 1988 tax year. Appel-

3. Appellant cites Section 6(a) of LERTA, 72 P.S. § 4727(a).

lant's situation is a prime example of why such notice is required, since he apparently did not know that the reassessment occurred in two phases. If the Board engages in multiple phase reassessing in conjunction with the abatement program, it is imperative that the exact schedule of assessment be provided to the taxpayers. The Board presented such a schedule for appellant as evidence in the trial court but had never sent the schedule to appellant.

■ Although we feel that the Board did not provide proper notice to appellant, this does not mean we will reverse the trial court's decision for this reason. The Improvement Act does not specify what relief is to be granted in the event that notice is not given. Section 11 of the Third Class County Assessment Law [4] provides that a defect in notice of an assessment shall not be sufficient grounds for setting the assessment aside, but merely preserves the right to appeal the assessment and the right to a hearing. While this section has never been held to apply to notice under the Improvement Act, the relief nevertheless appears proper. Since appellant was given the opportunity to challenge the reassessment before the trial court, no other relief is more appropriate and the issue of proper notice becomes moot.

■ Appellant next argues that the use of the common level ratio violates the objective of Section 7(d) of the Third Class County Assessment Law, 72 P.S. § 5348(d), to accomplish equalization with other similar properties within the taxing district and the requirement of uniformity of taxation in the Pennsylvania Constitution. Appellant seems to be arguing that because his property is worth more than similar property in other parts of the county, the Board must make some adjustment so that the assessment of similar properties is equal. This argument is meritless. The purpose of establishing a common level ratio for the county is to assure that the same ratio of assessment to market value is uniformly applied to all property within a county. If the assessors did *not* use the same ratio then

4. Act of June 26, 1931, P.L. 1379, *as amended,* 72 P.S. § 5350b.

they might run into constitutional problems since some property owners would be paying less tax in comparison with the market value of their property. Where a taxpayer owns property with a greater market value than similar property in other parts of the county, the taxpayer must bear the heavier tax burden attendant with the greater benefits of owning more valuable property. As to the Third Class County Assessment Law, the section cited refers to revisions to an actual selling price in order to accomplish equalization with the actual market values of similar properties.

Appellant next tries to argue that because the rental income was reduced when the property was converted from a twelve unit residential dwelling to a two unit residential dwelling the property was not improved. This argument is also meritless. The evidence presented by the Board clearly established that the value of the property was greatly enhanced by appellant's extensive renovations. These assessments are made based on the market value of the property. Section 7(c) of the Third Class County Assessment Law, 72 P.S. § 5348(c).

The Board's determination of market value was based on the potential sale of each dwelling unit as a separate tract. In fact, the Board presented evidence that appellant had offered the units for sale separately at a price per unit which would have yielded more than the Board's estimate of market value. Appellant testified that he would incur certain costs in separating the units for sale and argues that the trial court erred in not considering the cost of separating the units. We find no error as appellant presented no evidence of the amount of such costs, nor did he contend at trial or in this Court that the asking prices of the units were improperly admitted in evidence.

Finally appellant argues that the trial court erred in not allowing him to present evidence of the assessments of other property in the vicinity of the property in question. We agree it was error to exclude this testimony. Appellant refers to the language in Sections 8(d.3) and 9(a.2) of the

Third Class County Assessment Law [5] to the effect that a taxpayer may appeal "any base year valuation without reference to ratio," and attempts to argue that an assessment of property without reference to ratio can only be accomplished through a comparison of the property with similar property in the same area. Appellant cites no authority for this interpretation of the quoted language and we are unable to ascertain any on our own. This argument is needlessly involved. As we understand it, however, the appellant is really arguing that the market value of his property has been improperly inflated. He attempts to prove this by pointing to the assessment of other properties alleged to be comparable. For example, he says that another house at 267 Herr Street is similar except it has an additional bedroom and two parking spaces. 267 Herr Street, he offers to prove, was reassessed at $25,300 and 269/71, the present property, was assessed at $113,100. Since appellant is not attacking the common level ratio, he is arguing inflated market value placed on his property by the Board. He also offered to show the assessment of seventy other residential properties in the vicinity which, according to his reply brief, were assessed on the average of $26,233.00. The court notes the case of *Stevenson et al. Tax Assessment Case*, 52 Pa.Commonwealth Ct. 506, 416 A.2d 600 (1980). In that case, Judge Blatt held the trial court erred in failing to consider the assessments of comparable properties in the neighborhood. The opinion considered this an attack on the uniformity of the assessments, but as Judge Mencer points out in a dissenting opinion:

> The problem, if there is one, lies with fair market value determinations. Thus, if two properties located next to or near each other have comparable worth but appreciably different assessments, the explanation is simply that the fair market value determination for one of the properties is more realistic or 'fair' than such a determination for the other property. Since both are assessed at a 50–percent ratio, a question of uniformity in that regard cannot arise.

5.  72 P.S. §§ 5349(d.3) and 5350(a.2).

*Stevenson,* 52 Pa.Commonwealth Ct. at 513–14, 416 A.2d at 603.

We do not mean to imply that the appellant has proven the invalidity of his assessment. We remand, however, for the trial court to consider the testimony, and to accept or reject it. The argument that this is appropriate only through expert testimony is misplaced, since the assessments are a public record, and are estimates of the market value of properties allegedly similar to the one involved here made by one of the parties to this litigation.

A remand for the sole purpose of considering the excluded evidence has been ordered.

### ORDER

NOW, May 15, 1990, the order of the Court of Common Pleas of Dauphin County, dated April 25, 1989, at Docket No. 3595–S–1988, is vacated. The case is remanded for the sole purpose of the taking of testimony and the filing of a revised order and opinion, in accordance with the attached opinion.

Jurisdiction relinquished.