604 A.2d 306

**MacDONALD, ILLIG, JONES & BRITTON**

**v.**

**ERIE COUNTY BOARD OF ASSESSMENT APPEALS and the County of Erie**

**Appeal of ERIE COUNTY BOARD OF ASSESSMENT APPEALS.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1991.

Decided Feb. 14, 1992.

Reargument Denied April 2, 1992.

522

Ted G. Miller, Asst. County Sol., for appellant.

James R. Walczak, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

The Erie County Board of Assessment Appeals (Board) and intervenor County of Erie (County) appeal from an order of the Court of Common Pleas of Erie County (trial court) that granted the motion for summary judgment of McDonald, Illig, Jones & Britton (McDonald, Illig) in a real estate tax assessment appeal. The motion requested a determination that a tax exemption under ordinances and a

resolution adopted pursuant to The Local Economic Revitalization Tax Assistance Act (LERTA),[1] for McDonald, Illig's share of the assessment of the shell and common areas of a newly constructed condominium office building runs from 1990 through 1994, rather than from 1989 through 1993.

Section 2 of LERTA, 72 P.S. § 4723, authorizes local taxing authorities "to exempt new construction in deteriorated areas of economically depressed communities and improvements to certain deteriorated industrial, commercial or other business property ...." A similar statute, the Improvement of Deteriorating Real Property or Areas Tax Exemption Act (IDRPA),[2] authorizes local taxing authorities "to exempt improvements to certain deteriorated residential property," Section 1 of IDRPA, 72 P.S. § 4711–101, and "to exempt ... the assessed valuation of any residential construction built in a deteriorating area," Section 302(a) of IDRPA, 72 P.S. § 4711–302(a).

McDonald, Illig, a law firm, owns two condominium units in a newly constructed seven-story office building known as "100 State Street" in the City of Erie (City). In June of 1988 a building permit was obtained and construction commenced on the shell of the building. An application was filed with the Board for a real estate tax abatement under LERTA. LERTA is implemented through County and City ordinances and a resolution of the School District of the City of Erie (School District). In November of 1988, when the building shell was partially completed, an assessed value of $200,000 was assigned for the shell only. In

---

1. Act of December 1, 1977, P.L. 237, *as amended,* 72 P.S. §§ 4722 through 4727. LERTA implements Article 8, Section 2(b)(iii) of the Constitution of Pennsylvania, which provides in part that the General Assembly may by law:

    Establish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas by an individual, association or corporation, or to encourage industrial development by a non-profit corporation ....

2. Act of July 9, 1971, P.L. 206, *as amended,* 72 P.S. §§ 4711–101 through 4711–305.

March of 1989 a building permit was obtained and construction commenced on McDonald, Illig's interior condominium units. An application also was made for LERTA tax exemption for those units. The Board tentatively approved all of the applications for tax abatement before construction was completed. The building shell was completed and occupancy permits were issued in April of 1989. The condominium units were completed and occupancy permits were issued in June of 1989.

In November of 1989 the Board notified McDonald, Illig of its portion of the assessment and exemptions for 100 State Street. The assessment was apportioned between the building shell and common areas and the interior condominiums. The notice stated that the tax exemption for the building shell and common areas would run for five years beginning in 1989. The exemption period for the interior condominiums was established for the years 1990 through 1994.[3] The Board determined the commencements of the exemptions by applying Section 4(b) of Erie County Ordinance No. 16 (April 17, 1985) (County Ordinance), which provides: "The exemption shall commence in the tax year immediately following the year in which the building permit is issued." The County Ordinance applies to tax exemptions under both LERTA and IDRPA. In addition, the Board has applied the requirement that the exemption commence in the year following the issuance of the building permit to applications for tax abatement made to the City and the School District, although their implementing provisions simply track the language of LERTA, and they do not contain commencement provisions similar to Section 4(b) of the County Ordinance.

McDonald, Illig appealed to the Board, contending that the time of commencement set forth in Section 4(b) of the County Ordinance violated the directive of Section 6(a) of LERTA, 72 P.S. § 4727(a), relating to procedure for obtaining exemption, which provides in part:

3. McDonald, Illig did not appeal from the exemption notice relating to the condominium units and that is not at issue in this case.

The assessment agency shall, *after completion of the new construction or improvement,* assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and notify the taxpayer and the local taxing authorities of the reassessment and amounts of the assessment eligible for exemption.   (Emphasis added.)

McDonald, Illig argued that the first year of the five-year period of exemption provided in the County Ordinance should be 1990, the year after the completion of the building, when McDonald, Illig's share of the assessment of the shell and common areas was $470,830.   If the exemption commenced in 1989, McDonald, Illig's exemption for the first year would be based only on its share of the $200,000 assessment of the partially completed shell, which was made in November of 1988.   The parties submitted the case to the court on stipulated facts, and they both filed motions for summary judgment.

The trial court concluded that the requirement of Section 6 of LERTA that the assessment be made "after completion of the new construction or improvement" was a substantive provision, despite its appearance in a section relating to procedure for obtaining exemptions.   It concluded further that some aspects of LERTA were mandatory, including the direction in Section 6 that the assessment for exemption purposes "shall" be made after completion and the requirement in Section 5, 72 P.S. § 4726, that the exemption "shall" be based on the additional valuation attributable to the actual cost of the new construction or improvements. Such an interpretation, the court reasoned, is consistent with the purpose of LERTA to provide incentives for development in certain deteriorated areas, and avoids the unreasonable result of a lost benefit to a developer during the first year of tax exemption if little or no work is completed on a project during the year in which the building permit is issued.   The trial court granted the motion for summary judgment in favor of McDonald, Illig and denied the motion

of the Board. The Board appealed and the County intervened.

■ The question presented here is whether LERTA precludes a local taxing authority from beginning a LERTA tax exemption at any time other than the tax year immediately following the completion of the new construction or improvements. Because we do not consider the words of the statute to be completely clear and free from all ambiguity, we must interpret it in accordance with the standard tools of statutory construction to ascertain the intent of the legislature. 1 Pa.C.S. § 1921(a).

The Board and County first argue that Section 6 of LERTA, headed "Procedure for obtaining exemption," is procedural, not substantive, and that on its face it has nothing to do with the substance of LERTA enactments. We note that 1 Pa.C.S. § 1924 provides in part: "The headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used in the construction thereof."

McDonald, Illig responds by quoting other sections of LERTA. The enabling section states in part as follows:

Each local taxing authority may by ordinance or resolution exempt from real property taxation the assessed valuation of improvements to deteriorated properties and *the assessed valuation of new construction ... in the amounts and in accordance with the provisions and limitations hereinafter set forth.*

Section 4(a) of LERTA, 72 P.S. § 4725(a) (emphasis added). The section headed "Exemption schedule" includes the following provisions:

(a) A local taxing authority granting a tax exemption pursuant to the provisions of this act may provide for tax exemption on *the assessment attributable to the actual cost of new construction* or improvements or up to any maximum cost uniformly established by the municipal governing body....

(b) [T]he actual amount of taxes exempted shall be in accordance with a schedule of taxes exempted established by a local taxing authority *subject to the following limitations:*

(1) The length of the schedule of taxes exempted shall not exceed ten years.

(2) The schedule of taxes exempted shall stipulate the portion of new construction or improvements to be exempted each year.

(3) The exemption from taxes shall be limited to *the additional assessment valuation attributable to the actual costs of new construction* or improvements to deteriorated property or not in excess of the maximum cost per unit established by a municipal governing body.

Section 5 of LERTA, 72 P.S. § 4726 (emphasis added).

McDonald, Illig argues persuasively that Section 4(a) of LERTA limits the local authority's power to grant tax exemptions. They recognize also that a taxing authority need not grant LERTA exemptions at all; however, if it chooses to do so, it must do so in accordance with the statutory limitations. One of those limitations, as expressed in Sections 5(a) and (b), is that the exemption be based on the additional "assessment" attributable to the "actual costs" of new construction. Therefore, Section 6 of LERTA provides a procedure whereby the assessment agency shall separately assess the improvement or new construction "after completion." Such a procedure implements the legislative intent that improvements will not be eligible for exemption until they are completed and fulfilling the purpose of contributing to the development of the deteriorated area.

█ We agree. A court must construe a section of a statute with reference to the entire statute and not apart from its context. *Yorktowne Tennis Club, Inc. v. York Township,* 120 Pa.Commonwealth Ct. 13, 548 A.2d 357 (1988). Whether the "after completion" language of Section 6 is regarded as being substantive or procedural, a

reading of that section together with Sections 4 and 5, which are indisputably substantive in nature, reveals an unmistakable intent that the exemption be based on the "actual costs" of a project. The actual costs are not known until the time of completion. If a project is not completed before the end of the year in which the building permit is issued, and the LERTA assessment is made at that time, then the exemption will be based on some fraction of the "actual costs" of the construction, which is contrary to the intent of the statute as a whole.

The Board and County argue that this interpretation may extend the period of exemption for years if a developer simply prolongs construction and prevents the taxing authority from assessing during construction. McDonald, Illig disagrees. It asserts that the practice of the Board has been not to assess new construction until it is completed, but it represents that it is willing to pay tax based on an assessment made during construction, so long as it is able to secure the full benefit of the LERTA exemption after completion. Although this question is not presented for our disposition, we believe that nothing in LERTA prohibits an assessment during construction for non-LERTA purposes. Of course, taxing authorities must treat properties under construction in a uniform manner. *See* Pa. Const. art. 8, § 1 (requiring taxes to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax).

■ The Board and County also contend that the direction in Section 6 of LERTA that the assessment agency "shall" assess the new construction or improvement (and calculate the amount eligible for exemption and notify the taxpayer and local authorities) after completion of the the project is directory rather than mandatory. They cite, among other cases, *Allegheny County v. Pennsylvania Public Utility Commission*, 192 Pa.Superior Ct. 100, 110, 159 A.2d 227, 233 (1960), where the court, interpreting statutes that required contracts between public utilities and municipal corporations to be filed with the Public Utility

Commission and its predecessor, stated, "When time and manner are not the essence of the thing required to be done, the statute will be regarded as directory and proceedings under it will be held valid, even though the command of the statute as to form and time has not been strictly obeyed ...." They contend that no serious adverse consequences flow from a directory interpretation, and they argue that the commencement date is among the permissible "limits established by the local taxing authority" mentioned in Section 6(a).

McDonald, Illig acknowledges that the word "shall" has sometimes been interpreted to be directory rather than mandatory. However, it argues that standard principles of construction require that the word be given its ordinary mandatory meaning unless the party advancing the directory interpretation meets a heavy burden of showing that a mandatory interpretation would so impair the efficacy of the act as to defeat its purpose or that it would produce an absurd and unreasonable result, citing *Prichard v. Willistown Township School District*, 394 Pa. 489, 496, 147 A.2d 380, 384 (1959). McDonald, Illig also notes, as did the trial court, that LERTA expressly provides that a taxing authority "may" do some things and "shall" do others. Thus the authority "may" enact a LERTA ordinance or resolution (Section 4(a)); it "may" join together with other authorities to establish uniform exemption programs (Section 4(b)); and it "may" exempt the assessment attributable to the actual cost of improvements *or* up to some uniform maximum cost (a method of implementation not involved in this case) (Section 5(a)). But where the authority chooses to create a LERTA exemption, it "shall" affix the boundaries of a deteriorated area before adopting the ordinance and hold a public hearing for determining those boundaries (Section 4(a)); it "shall" limit the exemption to the assessment value attributable to the actual cost of new construction or improvements (Section 5(b)); and it "shall," after completion of the new construction or improvements, separately assess

the value of such projects and determine the amount eligible for exemption (Section 6(a)).

We agree that the time and manner of conducting the assessment *are* of the essence under LERTA and that a directory-only interpretation could have a substantial effect on the benefits to be derived under the statute, as the facts of this case illustrate. The legislature's careful choice of words demonstrates an intent that the provisions employing the word "shall" be mandatory.[4] Also, a close reading of the disputed sentence in Section 6(a) shows that the phrase "in accordance with the limits established by the local taxing authorities" modifies only the phrase establishing the duty of the authority to "calculate the amounts of the assessment eligible for tax exemption." LERTA authorizes an authority to limit the number of years that an exemption shall exist (Section 5(b)(1)) and to limit the portion of the assessment eligible for exemption in each year that it is available (Section 5(b)(2)). However, Section 6(a) does not authorize an authority to commence the exemption in a year other than the year after the completion of the project.

The Board and County assert that where application of Section 4(b) of the County Ordinance results in an assessment of less than the total cost, because the construction or improvement project is not complete when the assessment is made, such a fractional assessment and exemption are permitted by Section 5(b)(2) of LERTA, 72 P.S. § 4726(b)(2), which is among the limitations set in the statute upon the power to grant exemptions. That section provides, "The schedule of exemption shall stipulate the portion of new construction or improvements to be exempted each year." We disagree.

4. McDonald, Illig quotes 2A C.D. Sands, *Statutes and Statutory Construction* § 57.11 (4th ed. 1973):

Where both mandatory and directory verbs are used in the same statute, or in the same section, paragraph or sentence of a statute, it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings.

The City and County ordinances and the School District resolution all provide that exemptions for *improvements to deteriorated residential property* are calculated according to a schedule of 100% in the first year, 80% in the second year and so on down to 20% in the last year of a five-year period. *Commercial improvement or new construction* exemptions are set at 100% of the eligible assessment for each of the five years. Joint Stipulation of Facts, Exhibit R (Erie City Council Ordinance 80 (October 21, 1981) § 381.-04), Exhibit S (County Ordinance § 4), Exhibit T (School District of Erie Resolution (October 19, 1982) § 5(2)); R.R. 55a, 60a, 72a. Such provisions "stipulate" the "portion" of the assessment to be exempt in each year. A rule that the County will exempt only so much of the value of construction as is completed within the year when the building permit is issued does not stipulate the portion to be exempt. If a project is completed during that calendar year, the "portion" is 100%. If the building permit is secured late in the year, or where the project is substantial and cannot be completed in the year in which the building permit is issued, the portion will be less than 100%. Any such uncompleted portion cannot be uniform, and it would not be "stipulated" by the taxing authority but rather determined by other factors.

The Board and County also contend that LERTA is *in pari materia* with IDRPA, and they note that IDRPA contains a provision in Article III specifying that for construction of new dwelling units in a "deteriorated area" as designated under the statute, "The exemption shall commence in the tax year immediately following the year in which the building permit is issued." Section 303(b) of IDRPA.[5] The Board and County assert that this is the only provision in the two Acts that specifies the time of commencement of the exemption. They argue that the Acts are otherwise "silent" as to time of commencement, and this provision should be held to apply to LERTA exemptions as well as those under IDRPA, noting that this court has

5. Added by the Act of August 5, 1977, P.L. 167, 72 P.S. § 4711–303(b).

stated that "there is no substantive difference between the statutes...." *Banzhoff v. Dauphin County Board of Assessment Appeals,* 133 Pa.Commonwealth Ct. 165, 168 n. 2, 575 A.2d 164, 165 n. 2 (1990). McDonald, Illig responds that LERTA and IDRPA are *not in pari materia,* and that applying Section 303(b) of IDRPA to LERTA exemptions would amount to inserting into LERTA a substantive provision that the legislature chose not to adopt.

The statute relating to construction of statutes *in pari materia,* 1 Pa.C.S. § 1932, provides:

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute.

We agree that LERTA and IDRPA, although they relate to *similar* persons and things, do not relate to the *same* persons and things. In *Banzhoff* both parties had presented arguments under LERTA rather than under IDRPA, which was the statute that actually applied. The issues there concerned matters of notice of the tax exemptions, and in this regard the provisions of the statutes are identical. The court noted that *for purposes of the arguments* presented in that case, there was no substantive difference. In the same footnote cited by the Board and the County, however, we also stated, "[IDRPA] applies to residential property, including multi-family dwellings, while [LERTA] applies to industrial, commercial and other business property." *Banzhoff,* 133 Pa.Commonwealth Ct. at 168 n. 2, 575 A.2d at 165 n. 2. Commercial construction or improvement within a deteriorated area is not the same "thing" or "class of things" as residential construction or improvement. In addition, as McDonald, Illig notes, Section 303(b) of IDRPA appears only in Article III of that Act, relating to "Deteriorated Areas Improvement," which provides for exemptions for "residential construction" as defined in Section 301, 72 P.S. § 4711–301. Article II, relating to "Deteriorating Dwellings Improvement," applies to "improvements" to

dwelling units, as defined in Section 201, 72 P.S. § 4711–201. The separate Articles of IDRPA contain very different specified exemption schedules. There is no reason to conclude that the specified commencement of the exemption in Section 303(b) of IDRPA applies even to exemptions under Article II of IDRPA, much less to exemptions under LERTA, which is an entirely separate Act.

The Board and County contend that the enactment of LERTA in December of 1977, shortly after the reenactment and substantial amendment of IDRPA in August of 1977, leads to a conclusion that the later, similar statute must be interpreted in light of the earlier statute. However, we agree with McDonald, Illig that these facts actually support the opposite conclusion. The enactment of LERTA some four months after the reenactment of IDRPA, with the *omission* of a provision requiring that the exemption commence in the year after the issuance of the building permit, more reasonably indicates a legislative intent *not* to apply that particular substantive requirement to LERTA tax exemptions.

Finally, the Board and County contend that our interpretation of LERTA in *Northwood Nursing Care and Convalescent Home, Inc. v. City of Philadelphia, Board of Revision of Taxes*, 98 Pa.Commonwealth Ct. 401, 511 A.2d 281 (1986), *petition for allowance of appeal denied*, 515 Pa. 626, 531 A.2d 433 (1987), *appeal denied*, 484 U.S. 1037, 108 S.Ct. 767, 98 L.Ed.2d 854 (1988), provides authority for the Board and County to impose the commencement date at issue here, even if LERTA is not interpreted as requiring it. In *Northwood* the local ordinance set a limit of sixty days for applying for the tax exemption after the issuance of the building permit. The applicable section of LERTA provides that the application shall be made by the person desiring the exemption "at the time he secures the building permit ...." Section 6(a). We held that the city's requirement was reasonable and was "within the authority granted to the City to supplement the enabling legislation." *Northwood*, 98 Pa.Commonwealth Ct. at 405, 511 A.2d at 283.

Therefore, *Northwood* held simply that a local authority has the power to supplement provisions of LERTA regarding matters when the the statute is silent.

LERTA makes the creation of the tax exemption optional, and it permits a taxing authority to determine how long it will last and what portion of the assessment is to be exempted in each year, thereby giving the local authority broad power to determine what exemptions it wishes to provide. Again, what a local authority may not do, is implement LERTA in a manner contrary to the mandates of the statute, and LERTA mandates that the tax exemption commence in the year after the completion of the construction or improvement. A local authority lacks power under LERTA to establish a different time of commencement.

Therefore, we affirm the order of the trial court granting the motion for summary judgment of McDonald, Illig. Section 4(b) of the County Ordinance is void insofar as it conflicts with the commencement of real estate tax exemptions provided under LERTA to the year after the completion of the eligible new construction or improvement.

## ORDER

AND NOW, this 14th day of February, 1992, the order of the Court of Common Pleas of Erie County at No. 852–A–1990, entered December 4, 1990, is affirmed. Section 4(b) Erie County Ordinance No. 16 (April 17, 1985) is void insofar as it conflicts with the commencement of real estate tax exemptions provided under The Local Economic Revitalization Tax Assistance Act, Act of December 1, 1977, *as amended*, 72 P.S. §§ 4722 through 4727, which specifies that the exemption is to commence the year after the completion of the eligible new construction or improvement.

PELLEGRINI, Judge, dissenting.

I respectfully dissent. In enacting LERTA, the General Assembly authorized a taxing body to fashion its own program to meet the economic conditions of its community.

Contrary to the intent of the General Assembly, the majority finds that Section 6 of LERTA, which by its plain language only imposes procedural duties on a Board of Assessment, precludes a taxing authority from determining when an exemption is to commence. Moreover, its holding that the exemption begins one year after the completion of the improvement is internally inconsistent with its holding that an exemption must commence strictly with Section 6's purported mandates.

Section 6 of The Local Economic Revitalization Tax Assistance Act of December 1, 1977, P.L. 237, *as amended*, 72 P.S. § 4727 (LERTA),[1] is implemented through city, county and school district ordinances.

Section 6, entitled *"Procedure* for obtaining exemption", provides (emphasis added):

Any person desiring tax exemption pursuant to ordinances or resolutions adopted pursuant to this act, shall notify each local taxing authority granting such exemption in writing on a form provided by it submitted at the time he secures the building permit or other notification of new construction or improvement is required, at the time he commences construction. A copy of the exemption request shall be forwarded to the board of assessment and revision of taxes or other appropriate assessment agency. The assessment agency shall, *after completion of the new construction or improvement,* assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and notify the taxpayer and

---

1. The LERTA statute implements Article VIII, Section 2(b)(iii) of the Constitution of Pennsylvania which reads:
   (b) The General Assembly may, by law:
   . . . .
   (iii) Establish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas by an individual, association or corporation, or to encourage industrial development by a non-profit corporation;

the local taxing authorities of the reassessment and amounts of the assessment eligible for exemption.

. . . .

From its plain language, Section 6 places no restrictions on a local taxing authority's ability to set the date of onset of the tax exemption. Rather than placing any restriction on the local taxing authority, its purpose is to establish a procedure and authorization for a Board of Property Assessment to implement the exemption as enacted by the local taxing authority.

Section 6 only sets forth the procedure by which an exemption is obtained and how it is calculated. It requires the Board, once it has received from the local taxing authority the application for exemption that the building owner filed at the time he obtained the building permit, to:

· after completion, assess separately the new improvement;

· calculate the amount of the assessment eligible for exemption in accordance with the limits established by the local taxing authorities; and

· notify the taxpayer as well as the local taxing authorities of the amount of the exemption.

Nothing in this Section places any limitation on the local taxing authority's discretion on how to fashion a program that it believes will serve its economic revitalization goals including setting the timing for the beginning of the exemption.

In *Northwood Nursing Care and Convalescent Home, Inc. v. City of Philadelphia, Board of Revision of Taxes*, 98 Pa.Commonwealth Ct. 401, 511 A.2d 281 (1986), *petition for allowance of appeal denied*, 515 Pa. 626, 531 A.2d 433 (1987), *appeal dismissed*, 484 U.S. 1037, 108 S.Ct. 767, 98 L.Ed.2d 854 (1988), addressing the Section 6 requirement that the application for exemption should be made at the time the building permit is secured, we held that it was within the local taxing authority's power to define at the time the building permit is secured as being within sixty

days of the date when the building permit is issued. We stated "the plain language of the Act clearly contemplates that whether the exemption will be available and how it is to be obtained is left to the determination of the local taxing authorities." *Id.* 98 Pa.Commonwealth Ct. at 405, 511 A.2d at 283.

Limits on the local taxing authority's LERTA program are imposed by Section 5(b) of LERTA, 72 P.S. § 4726(b) which provides:

Whether or not the assessment eligible for exemption is based upon actual cost or a maximum cost, the actual amount of taxes exempted shall be in accordance with the schedule of taxes exempted established by a local taxing authority subject to the following limitations:

(1) The length of the schedule of taxes exempted shall not exceed ten years.

(2) The schedule of taxes exempted shall stipulate the portion of new construction or improvements to be exempted each year.

(3) The exemption from taxes shall be limited to the additional assessment valuation attributable to the actual costs of new construction or improvements to deteriorated property or not in excess of the maximum cost per unit established by a municipal governing body.

As long as the exemption is for new construction, not for more than ten years, runs with the property and is uniform, this provision provides local taxing authorities with wide latitude to determine both the length of the exemption schedule and the portion to be exempted each year. 72 P.S. § 4726(b). The absence of any requirement in Section 5 as to when an exemption should commence, indicates that the General Assembly left that determination to the local taxing authority. If a local taxing authority wants to only exempt those improvements made in the year following the issuance of the building permit, nothing in Section 5 would preclude such a provision.

The argument that if it is within the local taxing authority's discretion when an exemption begins is adopted, a building owner will not be able to receive the full value of the exemption because all of its improvements were not completed prior to the year following the issuance of the building permit is simply not maintainable. While that may be so, a local governing authority is not even required to enact a LERTA ordinance. How much encouragement the local authorities would like to provide and the scope and timing of the exemption given is totally within their discretion.

Finally, the majority opinion is internally inconsistent, finding that Section 6 of LERTA mandates that the exemption must begin *one year after* the completion of the improvement. However, Section 6 provides that it will commence "after the completion of the new construction or improvement." There is nothing in Section 6 that authorizes it to commence *one year after*. The *one year after* language is contained in the county ordinance that the majority finds not to be in accord with LERTA. Reading Section 6 the way the majority interprets it would mean that the exemption would begin in June of 1989, not January of 1990.

Because the LERTA statute does not require local taxing authorities to commence an exemption the year following completion of the improvement, the County has the discretion to determine the exemption would begin in the year following the issuance of the building permit. Accordingly, I would reverse.