**EXTENDED CARE CENTERS, INC., d/b/a Lake Erie Institute of Rehabilitation, a Pennsylvania Corporation**

v.

**COUNTY OF ERIE, City of Erie, School District of the City of Erie, Board of Assessment Appeals of the County of Erie.**

**Lakeside Health Corporation, d/b/a Great Lakes Rehabilitation Hospital, a Pennsylvania Corporation**

v.

**County of Erie, City of Erie, School District of the City of Erie, Board of Assessment Appeals of the County of Erie.**

**School District of the City of Erie, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1999.

Decided April 11, 2000.

John W. Beatty, Erie, for appellant.

Stephen R. Thelin, Erie, for appellees, Extended Care Centers, Inc. & Lakeside Health Corp.

Before DOYLE, President Judge, and COLINS, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

COLINS, Judge.

The School District of the City of Erie appeals the order of the Court of Common Pleas of Erie County granting summary judgment in favor of Extended Care Centers and Lakeside Health Corporation (Taxpayers) and ordering the refund of real estate taxes paid on improvements to their properties in 1990 and 1991 with interest.[1]

The Taxpayers owned deteriorated commercial property in the City of Erie and applied for tax exemptions under The Local Economic Revitalization Tax Assistance Act (LERTA).[2] Erie County implemented LERTA by Ordinance No. 16 of 1985; Section 4 of the Ordinance exempts 100 percent of the eligible assessment commencing in the tax year immediately following the year in which the building permit is issued. The City of Erie implemented LERTA by Erie Codified Ordinance § 381.1 et seq., which exempts only the portion of the additional assessment attributable to the improvement for which a separate assessment has been made. The School District implemented LERTA by Resolution, which also exempts only the portion of the additional assessment attributable to the improvement and for which a separate assessment has been made. The Resolution calls for such separate assessment upon completion of the improvements.

The Taxpayers applied for and received building permits in 1984. The Erie County Board of Assessment Appeals calculated the exemption periods to run from 1985 through 1989.[3] The Taxpayers' improvements were separately assessed in 1986. After the expiration of the LERTA exemptions, the Taxpayers paid real estate taxes on the improvements in 1990 and 1991. In 1992, this Court decided *MacDonald, Illig v. Erie County,* 145 Pa.Cmwlth. 521, 604 A.2d 306, *petition for allowance of appeal denied,* 533 Pa. 603, 617 A.2d 1276 (1992), which challenged the validity of the Erie County ordinance implementing the LERTA exemption. In that case we held that LERTA does not authorize local taxing authorities to commence the exemption in a year other than the year after the completion of the improvements. In January 1993, the Taxpayers requested refunds of taxes paid on the improvements in 1990 and 1991; the refunds were denied.

In December 1993, the Taxpayers filed suit against the local taxing authorities under Section 1 of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b (Refund Act), which provides for the refund of taxes paid pursuant to an invalid interpretation of a valid statute. The

---

1. This case was assigned to the authoring judge on January 31, 2000.

2. Act of December 1, 1977, P.L. 237, *as amended,* 72 P.S. §§ 4722–4727. LERTA authorizes local taxing authorities to exempt the assessed valuation of improvements to deteriorated industrial, commercial, and business properties.

3. Section 6(a) of LERTA provides that the exemption request shall be forwarded to the county board of assessment, which after the completion of the improvements, shall assess separately the improvements, calculate the amounts eligible for exemption, and notify the taxpayer and local taxing authorities of the amount of the reassessment and amount eligible for exemption. 72 P.S. § 4727(a).

School District filed counterclaims, seeking to recover taxes on the partial or full assessments it would have made in 1985 and 1986 had it followed its normal procedure for large construction projects.[4] The parties completed court-ordered discovery, and the trial court denied the School District's request for a jury trial and overruled its preliminary objections.

In three separate orders dated August 1997, March 1998, and February 1999, the trial court granted summary judgment in favor of the Taxpayers on the issue of liability, on the counterclaims, and on the issue of interest. The court concluded that the Taxpayers met the statutory requirements for bringing suit under the Refund Act and were entitled to a refund. On the counterclaims, the court concluded that the School District was not entitled to any additional taxes for the 1985 and 1986 tax years because there were no assessments on the improvements for those years and because the law does not permit retroactive assessments. The court rejected the School District's claim that the Taxpayers willfully evaded taxation in those years or that they in some way caused the taxing authorities not to make partial assessments of the improvements in those years. The court awarded interest on the refund amounts under Section 806.1 of The Fiscal Code,[5] in accordance with Section 1(c)(1) of the Refund Act, 72 P.S. 5566b(c)(1).

■ Appellate review of an order granting summary judgment is plenary, and the same standard applies on appeal as before the trial court. *Albright v. Abington Memorial Hospital,* 548 Pa. 268, 696 A.2d 1159 (1997). Summary judgment is proper where there is no genuine issue of material fact as to a necessary element of the cause of action. Pa. R.C.P. No. 1035.2(1). Summary judgment may be granted only in cases where the right is clear and free from doubt. *Davis v. Brennan,* 698 A.2d 1382 (Pa.Cmwlth.1997). On appeal, the School District argues 1) that the Refund Act is inapplicable because the Taxpayers did not file assessment appeals; 2) that the trial court erred in denying it a jury trial; 3) that the LERTA tax abatement period may not be extended from five to seven years; and 4) that the Refund Act requires that the Taxpayers' claims for refund be verified.

### Necessity of Filing an Assessment Appeal

■ First the School District argues that the Refund Act is inapplicable because the Taxpayers failed to file assessment appeals when they received notices of reassessment in 1989 for the 1990 tax year; it argues that, once the Taxpayers failed to file assessment appeals, the School District became legally entitled to receive the taxes and that, therefore, the Taxpayers cannot claim a refund under the Refund Act for taxes to which the School District is not legally entitled.

Section 1 of the Refund Act provides, in pertinent part,

(a) Whenever any person ... of this Commonwealth has paid ... into the treasury of any political subdivision, directly or indirectly, voluntarily or under protest, any taxes of any sort, ... to which the political subdivision is not legally entitled; then in such cases, the proper authorities of the political subdivision, upon the filing with them of a written and verified claim for the refund of the payment, are hereby directed to make, ... refund of such taxes....

(b) The right to a refund afforded by this act may not be resorted to in any case in which the taxpayer involved had or has available under any other statute, ordinance or resolution, a specific remedy by way of review, appeal, refund or

---

4. Apparently, no partial assessments were made for those years because the local authorities considered the properties to be completely exempt at that time.

5. Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. § 806.1, added by Section 2 of the Act of April 8, 1982, P.L. 258.

otherwise, for recovery of moneys paid as aforesaid, unless the claim for refund is for the recovery of moneys paid under a provision of a statute, ordinance or resolution subsequently held, by final judgment of a court of competent jurisdiction, to be unconstitutional, or under an interpretation of such provision subsequently held by such court, to be erroneous.

(c)(1) Any taxpayer who has paid any tax money to which the political subdivision is not legally entitled shall receive interest on such sum of money. The political subdivision shall pay interest on such sums at the same rate and in the same manner as the Commonwealth is required to pay pursuant to section 806.1 of the act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code."

(2) For purposes of this subsection, the term "political subdivision" means a county, city, borough, incorporated town, township, home rule municipality, school district, vocational school district and county institution district.

72 P.S. § 5566b.

The trial court rejected the School District's argument that the Refund Act was inapplicable because the Taxpayers failed to file reassessment appeals. The trial judge concluded that the Taxpayers met the requirements of the Refund Act, which requires that a taxpayer show *either* that it exhausted all its remedies *or* that it paid tax moneys pursuant to an invalid statute or pursuant to an interpretation of a statute subsequently held to be invalid. In this case, the Taxpayers accepted the terms of their LERTA exemptions, and when those exemptions expired, the Taxpayers paid the taxes levied in 1990 and 1991 based on the County's assessments of the improvements. Only after this Court's 1992 decision in *MacDonald, Illig* did the Taxpayers file for refunds, because *MacDonald, Illig* held that LERTA prohibits Erie County and the other local taxing authorities from commencing the exemp-

tions in a year other than the year after completion of the improvements, thereby invalidating the contrary portions of the County and City ordinances and the School District's Resolution. The Refund Act simply does not require that taxpayers who paid taxes under these circumstances file assessment appeals or otherwise exhaust other available remedies.

To the extent that the School District relies on LERTA or case law in arguing that the Taxpayers were obligated to file assessment appeals, we disagree. Section 6 of LERTA, 72 P.S. § 4727, which provides the procedure for obtaining the tax exemption, states that "[a]ppeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer or the local taxing authorities as provided by law." The local taxing authorities incorporated virtually the same language in their ordinances/resolution. In this case, the Taxpayers were not challenging the reassessments or the amounts eligible for exemption; furthermore, such appeals generally must be filed within 30 days of the taxpayer's receipt of the reassessment, and these Taxpayers had no cause of action until after the *MacDonald, Illig* decision. These Taxpayers sought a refund based on an invalid interpretation of the law, years after they received their 1986 reassessments. The Taxpayers had no reason to file assessment appeals; they had reason to file for refunds based on the 1992 change in the law.

The taxpayers in *MacDonald, Illig,* a law firm, appealed to the Erie County Board of Assessment when it received notification of its exemption. Regardless of whether such appeal may be termed an "assessment appeal," the law did not provide for an appeal of the exemption period, but that issue was not raised in that case. In *Lincoln Philadelphia Realty Associates v. Board of Revision of Taxes,* 720 A.2d 174 (Pa.Cmwlth.1998), *petition for allowance of appeal granted,* 556 Pa. 579, 582, 584, 585, 729 A.2d 1119, 1121, 1122, 1222 (1999), which also involved exemptions that

commenced with the issuance of the building permits, when the taxpayers filed assessment appeals, the City of Philadelphia moved to quash the appeals because they were filed more than 30 days after the dates of the exemption notices. In ruling on that motion, the court of common pleas ruled that the exemption notices setting the exemption periods were not appealable adjudications, and this Court affirmed. The taxpayers raised the issue of the exemption period in assessment appeals at the earliest possible time after they received their notices of reassessment and termination of their exemptions. *Lincoln.* does not hold that all taxpayers who wish to challenge the exemption period must file assessment appeals; assessment appeals were filed in that case because such appeals were the most timely method of challenging the exemption period.

The facts and procedural posture of the present matter are readily distinguishable from those in *MacDonald, Illig* and *Lincoln.* Unlike the taxpayers in either of those cases, the Taxpayers in the present matter had no reason to challenge their exemption periods, the County's subsequent assessments of the improvements to their properties, or the amount of the exemptions during the exemption period or immediately thereafter. Rather, after the decision in *MacDonald, Illig* rendered the local exemption provisions invalid—which occurred two years after the expiration of their exemptions—the Taxpayers sought a refund of taxes to which the local authorities were not legally entitled, based on the invalid provisions. The Taxpayers need not have filed assessment appeals in order to proceed under the Refund Act.

### Jury Trial

▮ The School District acknowledges that the Refund Act does not expressly provide a right to trial by jury. (Appellant's brief, p. 23.) Rather, it argues that it is entitled to a jury trial under the Pennsylvania Constitution, which preserves the right to a jury trial in cases where it existed at the time the constitution was adopted, i.e., at common law. Pa. Const. art. I, § 6. In determining whether an action has a common law basis, we look to the nature of the proceeding and not the form of the pleading. *Commonwealth v. One (1) 1984 Z–28 Camaro Coupe*, 530 Pa. 523, 610 A.2d 36 (1992). The proper analysis is to ask whether the right to a jury trial for the claim existed at the time the Commonwealth government was first formed. *Wertz v. Chapman Township*, 709 A.2d 428 (Pa.Cmwlth.), *petition for allowance of appeal granted*, 556 Pa. 682, 727 A.2d 134 (1998). This constitutional provision guarantees that the jury will continue to be the tribunal that determines questions of fact in controversy between individuals. *Kituskie v. Corbman*, 552 Pa. 275, 714 A.2d 1027 (1998).

▮ We agree with the trial judge that the School District failed to establish that at common law a taxpayer had a right to a jury trial for a refund of taxes paid under an invalid interpretation of the law. The School District premises its argument on the terms of Section 2 of the Refund Act, 72 P.S. § 5566c, which provides that in the event that the local authority refuses the taxpayer's request for a refund of taxes to which it was not legally entitled, the aggrieved taxpayer may institute an action in assumpsit to recover the moneys. The School District argues by analogy to similar cases, that an "action in assumpsit" is one at law and that actions in assumpsit are heard by juries, and have been since the Pennsylvania constitution was adopted.

As we explained recently in *Wertz*, Pennsylvania jurisprudence in interpreting Article I, Section 6 has not accepted the reasoning by analogy used in the federal courts; if a right to a jury trial for a particular cause of action did not exist at the time the constitution was adopted, there is no constitutional right to have a jury hear the case. Although actions in assumpsit for the collection of debts may have existed at common law, the School District cites no authority to establish a common law right to a jury trial in an

action in assumpsit to recover taxes to which the taxing authority was not legally entitled.

Even if the School District had established a constitutional right to a jury trial in this case, we agree with the trial court that there are no issues of material fact as to a necessary element of the cause of action for a jury to determine. Although the School District contends that the date of completion of the improvements to the properties remains a disputed fact, the trial judge concluded that the completion date was not a material fact, and that it is sufficient that the record established that the improvements were assessed in December of 1986. (February 20, 1997 opinion, p. 5, n.5; Deposition of Joseph Cocco, pp. 37–40.) That fact alone, i.e., the separate assessment of the improvements in 1986, establishes the proper date of the commencement of the exemptions, which should have run from 1987 through 1991, and the Taxpayers' entitlement to refunds for the tax years 1990 and 1991.

■ On the remaining issues, we flatly reject the School District's characterization of the refunds as an extension of the LERTA abatement period from five to seven years. LERTA expressly provides an exemption for improvements to deteriorated property; such an exemption cannot, in logic or in reality, begin before the improvements have been completed. Section 6 of LERTA provides that the taxpayer must request the exemption at the time it secures its building permit or commences construction. 72 P.S. § 4727. It explicitly states, "The assessment agency shall, after completion of the new construction or improvement, assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption ... and notify the taxpayer ... of the reassessment and amounts of the assessment eligible for exemption." *Id.* The refund of the 1990 and 1991 taxes to the Taxpayers in this case will not have the effect of extending the exemption period under LERTA.

■ The School District argues that if the Taxpayers receive refunds for 1990 and 1991, they should then have to pay taxes on the improvements for the 1985 and 1986 tax years. The trial court concluded that the School District's claim was not supported in law or by evidence. The court noted that the School District could prevail on this issue only if 1) the improvements had been assessed in those years, but no taxes billed or paid because of the LERTA exemptions, or 2) Pennsylvania law permitted retroactive assessments, which it does not. The court found, "It is uncontroverted that the taxes have been paid in full for the assessed values of the properties in question for the years involved. In addition no part of the assessed values or any taxes were exempted due to LERTA in those years." (March 13, 1998 opinion, p. 5.)

■ The court similarly found no merit in the School District's claim that the Taxpayer's willfully evaded the taxes owed in 1985 and 1986. The court concluded that the taxes for 1985 and 1986 were never levied and never due, and that the Board of Assessment was aware that the improvements were being made after the Taxpayers applied for building permits and could have assessed them in those years. By way of argument on appeal on those issues, the School District states, that it "does not understand any of these reasons and believes that every reason is in error." (Appellant's brief, p. 30.) We accept the trial court's reasoning on these issues, and we agree with its conclusions.

■ Finally, we address the School District's claim that the Taxpayers failed to file a verified claim for refund as required under Section 1(a) of the Refund Act, 72 P.S. § 5566b(a). Because this claim was not raised before the court of common pleas, it is waived and cannot be raised on appeal.

For the reasons stated above, we affirm the order of the trial court.

## O R D E R

AND NOW, this 11th day of April 2000, the order of the Court of Common Pleas of Erie County in the above-captioned matter is affirmed.

Judge LEADBETTER dissents.