758 A.2d 1178 (2000)
LINCOLN PHILADELPHIA REALTY ASSOCIATES I, Appellee,
v.
The BOARD OF REVISION OF TAXES OF the CITY AND COUNTY OF PHILADELPHIA and the City of Philadelphia and the School District of Philadelphia, Appellants.
Lincoln Philadelphia Realty Associates II, Appellee,
v.
The Board of Revision of Taxes of the City and County of Philadelphia and the City of Philadelphia and the School District of Philadelphia, Appellants.
Nine Penn Center Associates, Appellee,
v.
The Board of Revision of Taxes of the City and County of Philadelphia and the City of Philadelphia and the School District of Philadelphia, Appellants. (Three Cases).
Philadelphia Airport Business Center Limited Partnership, Appellee,
v.
The Board of Revision of Taxes of the City and County of Philadelphia and the City of Philadelphia and the School District of Philadelphia, Appellants. (Two Cases).
Nine Penn Center Associates, Lincoln Philadelphia Realty Associates I, Lincoln Philadelphia Realty Associates II and Philadelphia Airport Business Center Limited Partnership, Appellees,
v.
The Board of Revision of Taxes of the City and County of Philadelphia and the City of Philadelphia and the School District of Philadelphia, Appellants.
Supreme Court of Pennsylvania.
Argued October 20, 1999.
Decided October 4, 2000.
*1179 Mark A. Aronchick, Joseph A. Dworetzky, Michael Lieberman, Dara B. Less, Stephanie L. Franklin-Suber, Richard Feder, Philadelphia, for City of Philadelphia, the School Dist. of Philadelphia and the Bd. of Revision of Taxes.
Thomas A. Leonard, Michael P. Weinstein, Philadelphia, for Nine Penn Center.
Bruce Alan Herald, Exton, for Airport Business Center.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

OPINION
SAYLOR, Justice.
This appeal concerns exemptions from local real estate taxation granted to Appellees, certain Philadelphia taxpayers, by Appellant, the Board of Revision of Taxes of the City and County of Philadelphia (the "Board").

*1180 I. Background
The history of this matter is complex, but highly relevant. In 1977, with the enactment of the Local Economic Revitalization Tax Assistance Act, 72 P.S. §§ 4722-4727 ("LERTA"),[1] the General Assembly authorized local taxing authorities to exempt from local real property taxation, by ordinance or resolution, the assessed valuation of improvements and new construction in deteriorated areas of economically depressed communities. See 72 P.S. § 4725(a). Pursuant to LERTA, the local taxing authority has discretion to grant exemptions, see 72 P.S. § 4725(a); and, if it decides to do so, to determine the amount of such exemptions, within specified limits, see 72 P.S. § 4726(a), (b); the duration thereof, to a maximum of ten years, see 72 P.S. § 4726(b)(1); and the boundaries of eligible areas, see 72 P.S. § 4725(a). See generally Northwood Nursing Care and Convalescent Home, Inc. v. City of Phila., Bd. of Revision of Taxes, 98 Pa.Cmwlth. 401, 405, 511 A.2d 281, 283 (1986) (observing that LERTA leaves it to local taxing authorities to determine whether exemptions will be available and, if so, how they are to be obtained), appeal denied, 515 Pa. 626, 531 A.2d 433 (1987), appeal dismissed, 484 U.S. 1037, 108 S.Ct. 767, 98 L.Ed.2d 854 (1988); BERT M. GOODMAN, ASSESSMENT LAW & PROCEDURE IN PENNSYLVANIA 497-504 (1999) (hereinafter GOODMAN, ASSESSMENT LAW).
Where a local taxing authority has chosen to grant exemptions pursuant to LERTA, the statute specifies the following procedure for obtaining such an exemption:
(a) Any person desiring tax exemption... shall notify each local taxing authority granting such exemption in writing on a form provided by it submitted at the time he secures the building permit, or if no building permit or other notification of new construction or improvement is required, at the time he commences construction. A copy of the exemption request shall be forwarded to the board of assessment and revision of taxes.... The assessment agency shall, after completion of the new construction or improvement, assess separately the new construction or improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and notify the taxpayer and the local taxing authorities of the reassessment and amounts of the assessment eligible for exemption. Appeals from the reassessment and the amounts eligible for the exemption may be taken by the taxpayer or the local taxing authority as provided by law.
72 P.S. § 4727(a). In the case of Philadelphia County, the authorization of appeals "as provided by law" implicates the First Class County Assessment Law, 72 P.S. §§ 5341.1-5341.21. The Assessment Law directs the Board to give printed or written notice, at least ten days prior to the first Monday in October of each year, to registered owners whose real property has sustained an increase or decrease in assessment, valuation, and ratio, see 72 P.S. § 5341.10(a); stipulates that "[a]ppeals from real estate assessments shall be filed on or before the first Monday of October," 72 P.S. § 5341.14(a); and instructs the Board to complete its hearings and dispose of all appeals "as promptly as possible," 72 P.S. § 5341.14(e).
In 1978, the Philadelphia City Council adopted Councilmanic Ordinance 1130 authorizing the Board to grant real estate tax exemptions on improvements to deteriorated industrial, commercial, and other business properties in all wards of the City. See Philadelphia Code § 19-1303(3) (hereinafter "Phila. Code"). The language of Section 19-1303(3) followed, in *1181 large part, that of its enabling act, LERTA. The property eligible for exemption was "limited to that improvement for which an exemption has been requested..., and for which a separate assessment has been made by the [Board]," id. at § 19-1303(3)(D)(1)(b), and the amount to be exempted from taxation was "limited to that portion of the additional assessment attributable to the actual cost of improvements," id. at § 19-1303(3)(D)(1)(a). At the time of the events here at issue, Section 19-1303(3) provided for a five-year exemption. See id. at § 19-1303(3)(D)(2)(a). Significantly, however, while Section 19-1303 stated, consistent with LERTA, that the Board was not to assess the improvement and calculate the amounts of assessment eligible for exemption until "after it has determined that the improvement is completed," id. at § 19-1303(3)(D)(3)(d), it also provided that the five-year exemption was to "commence in the tax year immediately following the year in which the building permit is issued," id. at § 19-1303(3)(D)(2)(a). Echoing LERTA, Section 19-1303(3) also stated that "[a]ppeals from the reassessment and the amount eligible for the exemption may be taken by the City or by the taxpayer as provided by law." Id. at § 19-1303(D)(3)(f).
Each of the taxpayer-appellees (collectively, "Taxpayers")Lincoln Philadelphia Realty Associates I ("Lincoln Realty I") and Lincoln Philadelphia Realty Associates II ("Lincoln Realty II"), developers of residential rental units at 4000 and 4040 Presidential Boulevard, respectively; Nine Penn Center Associates ("Nine Penn Center"), developer of the Mellon Bank Center at 1735 Market Street; and Philadelphia Airport Business Center Limited Partnership ("Airport Business Center"), developer of properties on Island Avenue and Bartram Avenueapplied to the Board to exempt improvements to the named properties. The Board granted Taxpayers' requests, notifying each taxpayer by letter that its exemption would commence with the year following the year in which the building permit was granted, and specifying in each letter the actual years for which the exemption would apply.[2] The exemption periods for each taxpayer were as follows: Lincoln Realty I, 1987-1991; Lincoln Realty II, 1989-1993; Nine Penn Center, 1989-1993; and Airport Business Center properties, 1987-1991. Taxpayers accepted the exemptions without comment, and enjoyed the benefit of substantial tax abatements as construction proceeded.[3]
In 1992, however, the Commonwealth Court issued its decision in the case of MacDonald, Illig, Jones & Britton v. Erie County Bd. of Assessment Appeals, 145 Pa.Cmwlth. 521, 604 A.2d 306, appeal denied, 533 Pa. 603, 617 A.2d 1276 (1992). Erie County, like the City and County of Philadelphia, had adopted an ordinance implementing LERTA, and that ordinance, like Phila. Code § 19-1303(3), provided that a real estate tax exemption was to commence "in the tax year immediately following the year in which the building permit is issued." Id. at 524, 604 A.2d at 308. The building in question was an office building known as 100 State Street, construction of which began in 1988. MacDonald, Illig, a law firm and the owner of two condominium units in the building, applied for a LERTA tax exemption for its *1182 portion of the building and was informed that its application was tentatively approved.
On November 1, 1989, the Board mailed to MacDonald, Illig assessment change notices setting forth the Board's calculation of the amount and duration of the LERTA exemption for the interior of the firm's units and for its portion of the "shell/common area" of the building. In accordance with the ordinance, the exemption for the latter was to begin in 1989, the applicable building permit having been issued in 1988.[4] MacDonald, Illig appealed the exemption to the county Board of Assessment Appeals, arguing that LERTA mandated that real estate tax exemptions commence in the year after the completion of the construction or improvement. The Board denied relief, MacDonald, Illig appealed to the Court of Common Pleas, and both MacDonald, Illig and the Board filed motions for summary judgment. The trial court granted summary judgment in favor of MacDonald, Illig, and the Board appealed to the Commonwealth Court.
Perceiving ambiguity in the pertinent provision of LERTA, the Commonwealth Court sought to determine the legislative intent behind the statute. Its analysis revealed "an unmistakable intent that the exemption be based on the `actual costs' of a project." Id. at 528, 604 A.2d at 310. Such costs cannot be known until the project is completed, the court reasoned, and therefore, if a tax exemption begins in the year immediately following the year in which the building permit is issued, and the project has not been completed by that point, "the exemption will be based on some fraction of the `actual costs' of the construction, which is contrary to the intent of the statute as a whole." Id. Having thus interpreted the intent of the legislature in enacting LERTA, and noting the statute's use of the mandatory term "shall," the Commonwealth Court held that a local taxing authority was without power to establish a point of commencement for exemptions different from that specified in LERTA. See id. at 534, 604 A.2d at 313. Accordingly, the court declared the Erie County ordinance to be void insofar as it conflicted with the commencement of exemptions under LERTA. See id.
In October of 1992, some eight months later, Lincoln Realty I and II filed assessment appeals challenging the Board's establishment of the beginning and ending dates of the LERTA exemption periods. The exemption for Lincoln Realty I had expired at the end of 1991, and that for Lincoln Realty II was scheduled to expire at the end of 1993. At the same time, Airport Business Center filed an appeal in connection with the LERTA exemption for its properties; such exemption had expired at the end of 1991. In October of 1993, Nine Penn Center filed an assessment appeal to challenge the expiration of its exemption, scheduled to occur at the end of that year.
The gravamen of Taxpayers' argument was that, regardless of when their exemptions had initially commenced or how lengthy a period of tax abatement they had already enjoyed, they were now entitled to have those exemptions calculated in accordance with the holding of MacDonald, Illig, that is, commencing in the year after the completion of the project. In essence, as the trial court later explained, Taxpayers proposed that
the period of exemption ... would shift to the appropriate period of time as determined by the MacDonald, Illig decision. For example, for Nine Penn Center, the exemption would be for the years 1994 through 1998, rather than 1989 through 1993.... [Taxpayers] argue that they are entitled to extend the period of exemption for a total period of as much as (in the case of Nine Penn Center) ten years.
*1183 Trial Court Opinion (Levin, J.) at 12 (emphasis in original).[5] Moreover, the extended exemptions, being based on the cost of the improvements after full completion, would be even more valuable than the mere addition of several years of exemption would suggest. For example, while the five-year exemption awarded to Nine Penn Center, the largest taxpayer, was worth almost $10,000,000, the same exemption calculated according to Taxpayers' scenario would be worth $16,000,000.[6]
Following hearings in the case of Nine Penn Center and Lincoln Realty I and II, but apparently not in the case of Airport Business Center, the Board denied the appeals. Taxpayers appealed the Board's rulings to the Court of Common Pleas. The Board, City, and School District ("Appellants") entered into a joint stipulation of facts with each of the taxpayers, and the parties agreed that Taxpayers would present their claims in the form of motions for summary judgment. In addition, Appellants filed motions to quash the appeals as untimely, the appeals having been filed as late as six years (in the case of Lincoln Realty I and Airport Business Center) after the Board's initial decisions granting the exemptions. The three cases were consolidated and assigned to the Honorable Bernard J. Avellino.
At the last of three oral arguments, held on August 22, 1994, Judge Avellino denied Appellants' motions to quash, reasoning that Taxpayers were not required to have appealed the Board's initial decisions because those decisions, having been made without affording Taxpayers the benefit of notice and hearings, were not valid adjudications. According to Judge Avellino, the Local Agency Law, 2 Pa.C.S. §§ 551-555, "distinguishes between an adjudication and a valid adjudication," and it is only the latter that a dissatisfied taxpayer must appeal. In Judge Avellino's view, "the exchange of papers between the applicant for the exemption and the government [i.e, the Board] was administrative in nature as opposed to adjudicatory in nature. It was an administrative exchange...."
In addition, Judge Avellino acknowledged that, in view of the Commonwealth Court's binding decision in MacDonald, Illig, "we now know that the Philadelphia ordinance as written was not in compliance with the state enabling legislation," and, as a result, "here is an entitlement applied for and received, but collected for the wrong years." Judge Avellino did not determine the relief owed to Taxpayers, however. Instead, he remanded the cases to the Board "for determination of the amount of `benefit' (exemption), if any, that is due each taxpayer." It is apparent from a reading of the hearing transcript that, in Judge Avellino's view, the cases presented "a disputed liability [which] should be settled."
Appellants appealed to the Commonwealth Court, contending that Judge Avellino had remanded the cases to the Board to perform a non-discretionary task (that is, calculating the amount of relief owed each taxpayer) and that his order to that effect was therefore an interlocutory order appealable as of right under Pennsylvania Rule of Appellate Procedure 311(f)(1).[7] *1184 The Commonwealth Court quashed the appeals, concluding that Judge Avellino's remand order was not appealable as of right under Rule 311(f)(1) because it did not determine that a tax exemption must be given to all of the taxpayers, did not specify the method of valuation to be used by the Board, and, most important, implicitly required that the Board exercise its discretion. See Nine Penn Center Ass'n v. City of Phila. Bd. of Revision of Taxes, 669 A.2d 1047, 1050 (Pa.Cmwlth.1995).
Upon remand, and following hearings, the Board determined in each case that the amount of benefit owed to the taxpayer was zero, for the following reasons:
The abatement was granted pursuant to section 1303(3) of The Philadelphia Code, and this Board is powerless to rewrite that enabling ordinance to cause the abatement to commence on a date different from that set by City Council. At all events, as an equitable matter, the Board finds that the taxpayer already has received substantial abatement benefits from the City and cannot seek different benefits only after determining that these different benefits may be more valuable than those initially requested and received.
Orders of the Board, December 30, 1996.
Upon their return to the Court of Common Pleas, Taxpayers' cases were assigned to the Honorable Stephen Levin. Preliminarily, Judge Levin noted that while he could not overrule the decision of Judge Avellino, a judge of co-equal jurisdiction, to deny Appellants' motion to quash Taxpayers' appeals, see Okkerse v. Howe, 521 Pa. 509, 516, 556 A.2d 827, 831 (1989), he would do so if the option were available to him, as, in his view, Taxpayers should have been required to appeal the Board's initial determination of the exemption period, or, alternatively, the subsequent changes in assessments throughout the exemption period.
That said, Judge Levin turned to the significance of the MacDonald, Illig decision for Taxpayers' case. Acknowledging Judge Avellino's ruling that, under MacDonald, Illig, Section 19-1303(3) violated LERTA, Judge Levin nevertheless rejected Taxpayers' argument that Judge Avellino had ruled that they were allowed to take advantage of the MacDonald, Illig holding. Instead of deciding the issue, Judge Levin explained, Judge Avellino had remanded the matter to the Board to determine whether Taxpayers were entitled to any "benefit," and, the Board having made its determination, it was now for the trial court to address whether MacDonald, Illig was controlling.
Judge Levin posited, as the crux of his analysis, a crucial distinction between the two cases: the taxpayer in MacDonald, Illig had challenged the initial assessment as soon as it was made, while Taxpayers in the present case "did nothing." Constrained though he was by Judge Avellino's prior ruling, Judge Levin opined that if Taxpayers had truly believed that the Board had not awarded them the abatements to which they were entitled, there were several avenues of relief open to them: they could have complained to the Board that the ordinance upon which it relied was at odds with LERTA, filed an action against the City and the Board alleging that the ordinance was invalid under LERTA, or filed a mandamus action seeking to force the Court of Common Pleas to permit an appeal from the Board's purportedly invalid adjudication. Taxpayers did none of these things, however, and, accordingly, Judge Levin concluded that, "[b]y their failure to press their rights in a timely manner," they had waived any right to take advantage of the change in the law represented by MacDonald, Illig.
Taxpayers appealed to the Commonwealth Court, which reversed Judge Levin's decision in virtually all respects. See Lincoln Philadelphia Realty Associates I v. Board of Revision of Taxes of City and County of Phila., 720 A.2d 174 (Pa.Cmwlth.1998). The Commonwealth Court determined that Judge Avellino had ruled, contrary to Judge Levin's interpretation, *1185 that Taxpayers were entitled to take advantage of the change in the law represented by MacDonald, Illig; that Taxpayers had not waived their right to do so by failing to appeal from the Board's initial exemption notices, since those notices, as Judge Avellino had found, were not adjudications within the meaning of the Administrative Agency Law;[8] and that Taxpayers had in fact pursued the only avenue of appeal "provided by law" when, in each case, they raised the exemption period issue in the earliest possible reassessment appeal (that is, after having been notified that their exemption period was about to expire).[9]See id. at 176-77. Thus, the Commonwealth Court declared that each of the taxpayers was entitled to have its five-year exemption reinstated as if it commenced the year after completion of the improvements.[10] In addition, the court declared that the Board was required to calculate Taxpayers' assessments without deducting therefrom the abatements incorrectly awarded for prior years, since, as the court had held in Petition of Mausoleum Constr. Co., 55 Pa.Cmwlth. 504, 423 A.2d 809 (1980), the Board lacked jurisdiction to alter assessments for years other than those under appeal. The financial significance of the Commonwealth Court's decision may be seen in its effect on the fortunes of Nine Penn Center, the largest taxpayer: originally entitled to a single, five-year exemption worth almost $10,000,000, Nine Penn Center was now entitled to a double, ten-year exemption worth $26,000,000.
Judge Leadbetter dissented. In her view, Taxpayers should have appealed from the Board's initial notification that their exemptions would run from the issuance of the building permits, and there was no basis in law or equity for giving Taxpayers the windfall that would result from the majority's decision to deny credit to Appellants for the initial years of abatement. See Lincoln Realty, 720 A.2d at 177-78 (Leadbetter, J., dissenting).
This Court granted allowance of appeal to consider whether the Commonwealth Court erred in allowing Taxpayers to challenge the validity of tax abatements that they had requested, received, and accepted; *1186 and, if not, whether the Commonwealth Court nevertheless erred in precluding the taxing authorities from equitably recouping the benefits that Taxpayers had received under those initial abatements.

II. Waiver
Before addressing the merits of the issues raised by Appellants, we consider Taxpayers' argument that Appellants have waived those issues owing to the City's failure to appear at any of the hearings held, both initially and on remand, by the Board. By "boycotting" the hearings, Taxpayers contend, the City failed to raise its claims at the earliest opportunity, thus depriving Taxpayers of the opportunity to respond to, and forfeiting Appellants' right to subsequent consideration of, those issues. To Appellants' argument that the Board is an arm of the City and acts on its behalf, and that this fact negates any need for the City to "appear" at the Board's hearings, Taxpayers respond that such argument only underscores the unfairness of the proceedings, as it suggests that they were not given a fair hearing before a neutral decisionmaker.
By requiring that an issue be considered waived if raised for the first time on appeal, we ensure that the trial court or agency that initially rules on such matters has had an opportunity to consider the issue. See Emerick v. Commonwealth, Dep't of Pub. Welfare, 47 Pa.Cmwlth. 285, 288 n. 6, 407 A.2d 1378, 1380 n. 6 (1979) (citing Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A.2d 114 (1974)); see also Wing v. Commonwealth, Unemployment Compensation Bd. of Review, 496 Pa. 113, 117, 436 A.2d 179, 181 (1981) (reasoning that an administrative law tribunal, like a trial court, must be given the opportunity to correct its errors as early as possible). Here, it is apparent, as Appellants suggest, that the Board did not lack such opportunity.
The Board is a city office. See Lennox v. Clark, 372 Pa. 355, 376, 93 A.2d 834, 844 (1953). The seven members of the Board are appointed by a majority of the judges of the Court of Common Pleas for Philadelphia County, see 72 P.S. §§ 5341.1, 5341.2, and their salaries are specified in the Philadelphia Code, see Phila. Code § 20-304(7). With regard to real property, the Board appoints assessors, 72 P.S. § 5341.4; divides the county into assessment districts and assigns assessors to those districts, 72 P.S. § 5341.5; establishes and maintains records of assessments, 72 P.S. § 5341.5; annually directs its assessors to value each parcel of realty within their respective districts, 72 P.S. § 5341.7; examines the valuations returned by the assessors and revises the assessments as necessary, 72 P.S. § 5341.8; prepares a statement of assessed values of all property for public inspection, 72 P.S. § 5341.9; and, as noted in Section I, supra, notifies property owners of changes in assessments and hears appeals from such assessments, 72 P.S. §§ 5341.10, 5341.14. See generally GOODMAN, ASSESSMENT LAW, at 5-6. The City's Department of Collections bills taxpayers in accordance with the assessments certified to it by the Board. Phila. Home Rule Charter § 6.6-201(a). In assessing property within the City, the Board performs a function "upon which the entire fiscal system of Philadelphia is dependent...." Lennox, 372 Pa. at 376, 93 A.2d at 844. In addition, as counsel for the City stated at a hearing before Judge Levin, the City Solicitor "work[s] with the Board." Given the Board's role in municipal government, Taxpayers cannot reasonably argue that the Board was deprived of the opportunity to consider the arguments now being advanced by Appellants.
Taxpayers also suggest, however, that the close working relationship between the City and the Board operated to deprive Taxpayers of a fair hearing for their arguments. In other words, they contend that the proceedings before the Board were, in essence, rigged against them. This argument implicates Taxpayers' right to procedural due process, an essential element of which is the right to be heard by a tribunal that is fair and impartial. See Lyness v. Commonwealth, State Bd. of Med., 529 Pa. *1187 535, 542, 605 A.2d 1204, 1207 (1992); Belasco v. Board of Pub. Educ. of the Sch. Dist. of Pittsburgh, 510 Pa. 504, 515, 510 A.2d 337, 343 (1986).
If the Board were the factfinder of last resort, whose decision could be reversed only for an abuse of discretion, an error of law, or lack of substantial evidential support, Taxpayers' arguments might warrant closer scrutiny. Such is not the case, however, as an appeal from the Board's ruling is heard by the trial court de novo. Westinghouse Elec. Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County, 539 Pa. 453, 464, 652 A.2d 1306, 1312 (1995). Thus, the determination to be reviewed on appeal is not that of the allegedly compromised Board, but that of the independent and impartial trial court.[11]Chartiers Valley Sch. Dist. v. Board of Property Assessment, Appeals and Review, 154 Pa.Cmwlth. 81, 93, 622 A.2d 420, 427 (1993). In other contexts, this Court has recognized that de novo review serves an ameliorative function where the initial decisionmaker is not an independent body. See Belasco, 510 Pa. at 514-15, 510 A.2d at 342-43 (explaining that, regardless of whether additional evidence is taken, the review exercised by the Secretary of Education over a school board's dismissal of a professional employee must be de novo, as a school board commingles prosecutorial and adjudicative functions in such a situation).[12]
Taxpayers fail to consider the significance of the trial court's de novo review to their due process argument, nor do they address the importance to such argument of the constitutional and legislative framework within which the Board functions.[13] *1188 Philadelphia comprises a single county, city, and school district. Pursuant to Article IX, Section 13 of the state Constitution, the City of Philadelphia performs all of the functions of the County of Philadelphia. As noted above, the First Class County Assessment Law imposes on the Board numerous duties which are essential to the fiscal health of the City, and performance of which renders the Board an integral part of the City. With respect to the Board's duty to hear assessment appeals, however, the Law provides little guidance beyond directing the Board to hear and dispose of such appeals "as promptly as possible." See 72 P.S. § 5341.14(e). Notably lacking is any instruction concerning the requirements for such a hearing and any recognition of the separate roles to be played by the Board and by the City as a whole.
Thus, Taxpayers' challenge concerns not merely the procedure by which their individual cases have been decided, but the procedure by which all such cases are decided in the City of Philadelphia. As Judge Levin observed, "what [we have] here is a system." Although such fact does not insulate the Board from challenges to its proceedings on procedural due process grounds, it does demand that such a challenge, to warrant review, be explicit, carefully reasoned and argued, and cognizant of its far-reaching implications. See Madison Constr. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 610 n. 8, 735 A.2d 100, 109 n. 8 (1999) (concluding that review of an issue was not warranted, given the importance of the issue and the minimal nature of the argument concerning it). Taxpayers' argument falls well short of this standard.
Finally, it is noteworthy that, in the law governing assessments in second class A and third class counties, the General Assembly has expressly envisioned a system that does not require municipal authorities to participate in the proceedings before local boards in order to preserve the right of appeal.[14] While it would certainly be preferable if the legislature had made its intentions similarly clear with respect to the first class county,[15] the cited statutory provision indicates that, at a minimum, such a system does not offend the legislature's understanding of the requirements for a proper assessment appeal. Accordingly, although the appropriate legislative prescription is absent, and without foreclosing consideration of due process arguments in an appropriate case, we decline to employ principles of due process or waiver to foreclose Appellants' position in the present appeal.

III. Timeliness
We allowed appeal primarily to consider whether, as Appellants argue, the Commonwealth Court erred in allowing Taxpayers to challenge the validity of the tax abatements that they had requested, received, accepted, and enjoyed. With regard to this issue, the parties view the matter through different lenses. Appellants argue that Taxpayers simply failed to comply with the fundamental principle that a party who is dissatisfied with the decision of a tribunal must, within 30 days, appeal such decision to a higher authority. *1189 See 42 Pa.C.S. § 5571(b); Pennsylvania Rule of Appellate Procedure 903(a); see also Lincoln Realty, 720 A.2d at 177-78 (Leadbetter, J., dissenting) (citing "the universal requirement that parties take timely appeals from administrative decisions of which they complain"). The decision to be appealed, according to Appellants, was the Board's granting of five-year LERTA exemptions commencing in the tax year immediately following the year in which the building permit was issued. As noted in Section I, supra, the Board informed Taxpayers by letter not only that their requests for exemptions had been granted, but also of the period during which those exemptions would apply. Appellants reason that those "letter decisions" were adjudications from which Taxpayers could and should have appealed. Alternatively, Appellants contend, Taxpayers could have appealed, as did the taxpayers in MacDonald, Illig, from the first of the annual assessment notices that they received following the award of their five-year exemptions.[16] Appellants maintain that, having availed themselves of neither opportunity to appeal, Taxpayers should not now be heard to complain that they did not receive the exemptions to which they were entitled.
Taxpayers respond that Appellants' timeliness argument rests upon a false factual premise, namely, that Taxpayers were dissatisfied with the abatements initially awarded to them. Taxpayers contend that, to the contrary, they were not dissatisfied with those abatements and therefore lacked reason and standing to challenge them. It was not until Appellants determined to return their properties to the tax rolls, Taxpayers argue, that they were aggrieved by Appellants' treatment of their properties. Accordingly, they assert, it was that decision that they challenged, and rightly so.
If, however, as Taxpayers assert, they were satisfied with the exemptions as initially awarded, they would have had no reason to be dissatisfied with the eventual return of their properties to the tax rolls. It is apparent from a reading of Phila. Code § 19-1303(3) that the ordinance contemplated a single exemption, to be sought within 60 days of the issuance of a building permit, see § 19-1303(3)(D)(3)(a), to commence at a specified time, see § 19-1303(3)(D)(2)(a), and to continue for a specified time, see id. Given the limited nature of the exemptions, Taxpayers cannot reasonably have expected that the exemptions would continue indefinitely or that they would be entitled to a second such exemption.
Nor do the facts bear out Taxpayers' assertion that they challenged in timely fashion Appellants' decision to return their properties to the tax rolls. The five-year exemptions for the Lincoln Realty I and Airport Business Center properties expired on December 31, 1991, yet assessment appeals for those properties were not filed until October of 1992. The assessment appeal for Lincoln Realty II was filed one year prematurely, despite that taxpayer's assertion in this appeal that "[taxpayers] cannot complain of past or future taxing periods." If Taxpayers' purpose was in fact to challenge the return of their properties to the tax rolls, then only the assessment for Nine Penn Center's property would have been appealed at the appropriate point in the process: on or before the first Monday of October of the year preceding the year in which the revised assessment is to be put into effect. See 72 P.S. § 5341.8 (explaining that the Board shall complete its revision of the assessments on or before the third Monday of September of each year, and that those revised assessments "shall constitute the assessed value for tax purposes of real *1190 property located in the county for the next ensuing calendar year" (emphasis added)).
It appears far more likely that the event that caused Taxpayers to feel aggrieved by Appellants' treatment of their properties was not the return (whether impending or already accomplished) of those properties to the tax rolls, but the Commonwealth Court's decision in MacDonald, Illig. With the issuance of that decision, it was apparent that if Section 19-1303(3) had been written as MacDonald, Illig required, it would have provided Taxpayers with tax abatements that were substantially more valuable, because they would have been based on the cost of the fully completed improvements, than those that they had actually received. Accordingly, and irrespective of when their properties had been or would be returned to the tax rolls, Taxpayers filed assessment appeals after the issuance of the MacDonald, Illig decision, seeking the recalculation of their exemptions in accordance with that decision.
Thus, Taxpayers' argument is, at base, a claim that Section 19-1303(3)(D)(2)(a) specified an incorrect commencement date for the five-year exemptions awarded to each of them, with the result that they received only a portion of the tax abatement to which they were entitled. Taxpayers did not seek to challenge the commencement date of the exemptions when the exemptions were awarded, and we are required to determine whether they may do so now.

A. Lincoln Realty I and Airport Business Center
As to Lincoln Realty I and Airport Business Center, the answer is clear: they may not. Although the First Class County Assessment Law provides for appeals from real estate assessments to be taken prior to the first Monday in October of the year preceding the year in which the revised assessment will take effect, 72 P.S. § 5341.14(a), neither Lincoln Realty I nor Airport Business Center filed an assessment appeal until after its entire five-year exemption had expired. Statutory provisions exempting property from taxation are to be strictly construed. See Four Freedoms House of Philadelphia, Inc. v. City of Phila., 443 Pa. 215, 219, 279 A.2d 155, 157 (1971). Thus,
"[i]f no appeal is taken from the assessment of taxes within the time allowed by law it becomes binding and conclusive[, and] neither the common pleas nor an appellate court can afford any relief." This holding constitutes a limitation on subject matter jurisdiction.
Mausoleum Constr. Co., 55 Pa.Cmwlth. at 508, 423 A.2d at 811 (quoting City of Phila. v. Dougherty, 153 Pa.Super. 554, 559, 34 A.2d 918, 920 (1943)). Where, as here, taxpayers have failed to file timely appeals as prescribed by the applicable county assessment law, such statutorily prescribed remedy is "lost beyond recall." Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County, 459 Pa. 268, 279, 328 A.2d 819, 824 (1974) (plurality); see also Academy Plaza Assoc., Ltd. v. Board of Revision of Taxes, City of Phila., 94 Pa.Cmwlth. 517, 520, 503 A.2d 1101, 1102-03 (1986) (noting that, pursuant to Mausoleum Constr., a court has no jurisdiction to resurrect the question of an exemption). Such a result "is salutary because the revenue base of taxing bodies should not be left open indefinitely" to retrospective claims. Mausoleum Constr., 55 Pa.Cmwlth. at 509, 423 A.2d at 812.[17]
*1191 B. Lincoln Realty II and Nine Penn Center
Lincoln Realty II and Nine Penn Center filed assessment appeals before their five-year abatement periods had expired. Even so, Appellants maintain that their appeals were untimely.
From the options available to it under LERTA, the City Council chose to authorize an exemption in the amount of "that portion of the additional assessment attributable to the actual cost of improvements," Phila. Code § 19-1303(3)(D)(1)(a), such exemption to commence at a specified date and to continue for five years, see Phila. Code § 19-1303(3)(D)(2)(a). Notably, such an exemption was to be awarded to an eligible taxpayer as a five-year whole; once the initial application was approved, the taxpayer was not required to reapply annually.[18] The duration and projected cost of these exemptions would necessarily have been incorporated into the City's revenue projections.
To allow a taxpayer to accept an exemption on the terms offered and then, after having received all or part of the promised benefits, to assert that the exemption should have been greater, would undermine the salutary goal, noted earlier, of ensuring the reliability of a municipality's revenue projections and, in consequence, its ability to provide the services that its residents need and expect. Moreover, enforcing a requirement of timely appeal eliminates the questionable practice of judicial reformation of a tax exemption on terms never contemplated by the municipality, as occurred in the present case. See supra note 10. See generally Man O'War Racing Ass'n v. State Horse Racing Comm'n, 433 Pa. 432, 441, 250 A.2d 172, 176 (1969) (recognizing that the public interest can play a role in determining whether an appeal must lie).
Here, it was the Board's "letter decisions" which first informed Taxpayers of the fact that their applications for exemptions had been granted, and of the terms, including the beginning and ending dates, of those exemptions. Appellants maintain that the letter decisions therefore constituted the Board's adjudications with respect to the periods of tax abatement awarded to Taxpayers, so that, if Taxpayers intended to challenge the abatement periods, they were required by the Local Agency Law to appeal from the letter decisions.[19]See generally Wilson Townhouses, *1192 Sections I and II v. Berks County Bd. of Assessment Appeals, 112 Pa.Cmwlth. 498, 500, 535 A.2d 1226, 1227 (stating the principle that an appeal from a decision of a tax assessment board must be filed within 30 days of the entry of the board's order), appeal denied, 519 Pa. 670, 548 A.2d 259 (1988).
Title 2 of the Pennsylvania Consolidated Statutes, which governs administrative law and procedure, defines "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations...."[20] 2 Pa.C.S. § 101; see also Hardee's Food Systems, Inc. v. Department of Transp., 495 Pa. 514, 520, 434 A.2d 1209, 1212 (1981) (observing that a decision of specific application, clearly affecting property rights, is unquestionably an adjudication). It is beyond dispute that the Board's initial decisions affected Taxpayers' property rights and obligation to pay local real estate taxes. See supra note 3. Insofar as the effect on property rights is concerned, the Board's decisions to grant five years of property tax abatements were just as much adjudications as, for example, the Department of Transportation's denial of a restaurant's application for permits to construct driveways from its property to a state highway, see Hardee's, 495 Pa. at 520, 434 A.2d at 1212; the Department of Banking's denial of an application to open a branch bank, see Conestoga Nat'l Bank of Lancaster v. Patterson, 442 Pa. 289, 298, 275 A.2d 6, 11 (1971); or a decision of the State Horse Racing Commission to grant licenses to certain applicants and not others, see Man O' War, 433 Pa. at 441, 250 A.2d at 176. While Taxpayers contend that they were not required to appeal the Board's letter decisions because those decisions, not having been preceded by notice and a hearing, were not "valid" adjudications, the need for such due process protections seems questionable given that the Board simply awarded Taxpayers the exemptions that they had requested, and as to which there was no dispute that they were entitled under Phila. Code § 19-1303(3)(D)(2)(a) as then written.
Moreover, even if the Board's letter decisions were not valid adjudications which triggered Taxpayers' obligation to appeal, those decisions were followed in each case by the first of Taxpayers' assessment notices to reflect the LERTA exemption.[21] Pursuant to the First Class County Assessment Law, each taxpayer could have filed an appeal from such notice, as did the taxpayer in MacDonald, Illig, and by that means effected a challenge to the commencement date of the exemptions. None of the taxpayers did so.[22] Taxpayers' failure to appeal from the first of the annual assessment notices, at the latest, renders their subsequent appeals untimely and deprives this and the lower courts of jurisdiction to grant the relief requested in those appeals.
Accordingly, the order of the Commonwealth Court reversing the order of the Court of Common Pleas (Levin, J.) dated October 7, 1997, is reversed.
*1193 Justice NEWMAN did not participate in the consideration or decision of this case.
Chief Justice FLAHERTY files a dissenting opinion.
Justice CASTILLE dissents.
FLAHERTY, Chief Justice, dissenting.
Inasmuch as appellant failed to exhaust, even pursue, administrative procedures, I would dismiss the appeal as improvidently granted.
NOTES
[1] Act of December 1, 1977, P.L. 237, No. 76, as amended. LERTA implemented Article VIII, Section 2(b)(iii) of the state Constitution, which authorized the legislature to "[e]stablish standards and qualifications by which local taxing authorities may make uniform special tax provisions applicable to a taxpayer for a limited period of time to encourage improvement of deteriorating property or areas...."
[2] Airport Business Center asserts that, while it received form notices reflecting the Board's approval of the exemption requests for both its properties, only with regard to the Bartram Avenue property did the Board notify it of the beginning and ending dates (19871991) of the exemption. Airport Business Center has stipulated, however, that building permits were issued for both properties on the same date (June 24, 1986). Moreover, Section 19-1303(3)(D)(2)(a), as then written, explicitly provided that the five-year exemption was to begin in the year immediately following the year in which the building permit was issued.
[3] The values of Taxpayers' five-year exemptions are as follows: Nine Penn Center, $9,980,496; Lincoln Realty I, $1,244,988; Lincoln Realty II, $1,001,714; and Airport Business Center, $416,965. Despite these apparently substantial sums, in their joint brief Nine Penn Center and Lincoln Realty I and II describe these abatements as "valueless."
[4] The exemption for the interior units was to run from 1990 through 1994, and was not at issue in the case.
[5] As to the other taxpayers, Lincoln Realty I would receive an additional two years of abatement; Lincoln Realty II, an additional one year; and Airport Business Center, an additional three years.
[6] Under the exemption as awarded, the amount of tax abatement enjoyed by Nine Penn Center increased from year to year, as construction progressed: $261,275 in 1989, $939,293 in 1990, $2,788,223 in 1991, $2,788,223 in 1992, and $3,203,481 in 1993, for a total of $9,980,495. If the exemption period had begun in the year following the completion of construction, however, the exemption for each of the five years would have been based on the cost of the completed improvements. Under that scenario, Nine Penn Center would have received $3,203,481 in tax abatement each year, for a total of $16,017,405.
[7] Rule 311(f) provides in pertinent part that "[a]n appeal may be taken as of right from: (1) an order of a common pleas court ... remanding a matter to an administrative agency or hearing officer for execution of the adjudication of the reviewing tribunal in a manner that does not require the exercise of administrative discretion...."
[8] The Commonwealth Court also opined that the City was in no position to complain that Taxpayers had been dilatory in filing their appeals, as the City "took no action to correct the tax exemption ordinance until two years after MacDonald, Illig was filed...." This is incorrect. On July 9, 1990, the City amended the pertinent ordinance to provide for a three-year exemption commencing in the tax year immediately following the year in which the initial certificate of occupancy for the property is issued. Phila. Code § 19-1303(3)(D)(2)(a) n.138. The revised ordinance was to take effect on January 1, 1992, and to govern applications for exemption filed on or after that date. Thus, the City's decision to amend the ordinance preceded not only the Commonwealth Court's February 14, 1992, decision in MacDonald, Illig, but the trial court's December 4, 1990, decision in that case as well. The reason for the Commonwealth Court's misstatement of fact is unclear; in its earlier decision quashing the City's appeal from Judge Avellino's order remanding the cases to the Board, the Commonwealth Court acknowledged that City Council had amended the ordinance in 1990, with such amendment to take effect in 1992. See Nine Penn Center, 669 A.2d at 1048 n. 1.
[9] The court noted that the exemption granted to Airport Business Center had expired in 1991, and that, after the court rendered its decision in MacDonald, Illig, Airport Business Center immediately sought to have the exemption period corrected to run from 1989, the year improvements were completed, to 1993.
[10] In specifying the concrete form of relief to which Taxpayers were entitled, the Commonwealth Court departed from its decision in MacDonald, Illig, in which it had simply declared the offending ordinance void insofar as it conflicted with LERTA. Moreover, in deciding that each taxpayer was entitled to a recalculated five-year exemption, the Commonwealth Court apparently took no notice of the fact that when the City amended the ordinance at issue, it not only changed the commencement date of the exemption, but also shortened its duration to three years. See footnote 7, supra. In light of our resolution of this appeal, we need not determine whether the Commonwealth Court erred in its formulation of relief.
[11] In a tax assessment appeal, our standard of review is whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. Westinghouse, 539 Pa. at 459, 652 A.2d at 1309.
[12] See also Baker v. Commonwealth, Pa. Human Relations Comm'n, 507 Pa. 325, 332 n. 5, 489 A.2d 1354, 1357 n. 5 (1985) (observing that the existence of a concurrent right to sue in the trial court allows the Commission to terminate complaints it deems meritless, as de novo review in the trial court will afford due process of law to the complainant); Conestoga Nat'l Bank of Lancaster v. Patterson, 442 Pa. 289, 298, 275 A.2d 6, 11 (1971) (noting that the state Banking Department was required to offer notice and a hearing to protesting banks before approving an application for a branch bank, while the federal Comptroller of the Currency was not required to do so because his decision was subject to de novo review in federal district court). But see Ward v. Village of Monroeville, 409 U.S. 57, 61-62, 93 S.Ct. 80, 84, 34 L.Ed.2d 267 (1972) (concluding that Ohio's trial court procedure would not be deemed constitutionally acceptable simply because it eventually offered an impartial adjudication to the defendant, who had been convicted of a traffic violation by a village mayor with a pecuniary interest in the outcome, as the defendant was "entitled to a neutral and detached judge in the first instance"); Lyness, 529 Pa. at 547, 605 A.2d at 1210 (citing Ward for the proposition that "[t]he right to a fair and impartial tribunal in the first instance is a cornerstone of our notion of jurisprudence," but noting also that the due process violation caused by intermingled functions within the State Board of Medicine was made more compelling by the very limited nature of appellate review); Katruska v. Department of Educ., 727 A.2d 612 (Pa.Cmwlth.1999) (stating, in apparent contrast to Belasco, that "any post-deprivation proceeding, which may or may not include de novo review, is insufficient to cure an earlier procedural due process violation"), appeal granted, 561 Pa. 703, 751 A.2d 195 (2000).
[13] In general, Taxpayers provide little substantive analysis of the due process aspects of their claim of waiver. The joint brief filed by Nine Penn Center and Lincoln Realty I and II does not address the Board's asserted deficiencies under the rubric of procedural due process, and Airport Business Center simply suggests the existence of such an issue by citing Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and asserting that the Board "completely deprived [Taxpayers] of an impartial forum and any semblance of due process." Taxpayers were even less forthcoming in the Commonwealth Court, where the responsibility rested on them, as appellants, to raise and develop the issue. There, Nine Penn Center and Lincoln Realty I and II did not refer to the Board's alleged bias, and while Airport Business Center asserted that the Board had abandoned any pretense of impartiality, it did not assert a violation of its due process rights as a basis for relief.
[14] The pertinent provision proceeds as follows:

The corporate authorities of any borough, town, township, school, ... and county, who may feel aggrieved by any assessment of property ..., shall have the right to appeal therefrom in entirety or by individual assessments in the same manner ... as if such appeal were taken by a taxable with respect to his assessment, and in addition may take an appeal from any decision of the board or court of common pleas as though it had been a party to the proceedings before such board or court even though it was not such a party in fact. Such authorities may intervene in any appeal by a taxable under section 9 of this act [providing for appeals to court] as a matter of right.
72 P.S. § 5350i (emphasis added).
[15] As noted earlier, see Section I, supra, the City Council provided in Phila. Code § 19-1303(3) that appeals could be taken by the City or the taxpayer from the reassessment and exemption determinations. The Council did not further specify the role of the City, however.
[16] Taxpayers contend that Appellants waived this argument by failing to raise it in the Commonwealth Court. Taxpayers fail to note, however, that the possibility of appealing the assessment notices was raised by Judge Levin in his decision, and that it was Taxpayers, not Appellants, who appealed that decision to the Commonwealth Court. Appellants filed a cross-appeal solely to address the remedy to be adopted if the Commonwealth Court were to decide the appeal in Taxpayers' favor.
[17] Airport Business Center, individually, argues that it is also entitled to relief because it filed with the City's Department of Revenue a timely petition for refund of taxes paid after the expiration of its LERTA exemption. See Phila. Code § 19-1703(1)(d) (requiring such a petition to be filed within three years from the date of payment). The Philadelphia Code provides for the refund of taxes "paid under mistake of law or fact, or under an invalid law." Phila. Code § 19-1703(1)(a). After the Department of Revenue denied the refund petition, Airport Business Center filed a petition for review of such denial with the City's Tax Review Board. After the Tax Review Board had scheduled a hearing on its petition, the parties agreed to stay the refund proceeding, with the understanding that if, at the conclusion of the litigation, the taxpayer was entitled to an additional period of tax abatement, Appellants would refund the taxes at issue.

Although an appellant in the Commonwealth Court, Airport Business Center did not present this argument for relief to that court. In any event, our holding in this case is that, owing to its failure to challenge the LERTA exemption as initially awarded, Airport Business Center is not entitled to any additional tax abatement.
We are aware that the Commonwealth Court has recently affirmed a refund of taxes paid following the expiration of a LERTA exemption, the vehicle for the refund in that case being the Commonwealth's Refund Act, 72 P.S. § 5566b, which provides for the refund of taxes "to which the political subdivision is not legally entitled." Extended Care Centers, Inc. v. County of Erie, 749 A.2d 566 (Pa.Cmwlth.2000), allocatur pending. As that case is not presently before us, we note only that there exists a fundamental conflict between the Commonwealth Court's conclusion that the taxpayers "had no cause of action until after the MacDonald, Illig decision," id. at 570, and the conclusion that we reach in the present case.
[18] At the time that Taxpayers applied for their exemptions, Section 19-1303(3) provided that the tax exemption would continue, provided that the applicant filed with the Board an annual certificate of continuing use; the Board was authorized to terminate the exemption if the taxpayer failed to file such a certificate or on its own determination that the property had ceased to be used for purposes justifying the exemption. Phila. Code § 19-1303(3)(D)(4)(a).
[19] "Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)." 2 Pa.C.S. § 752. It is undisputed that the Board of Revision of Taxes is a local agency. See GOODMAN, ASSESSMENT LAW, at 20.
[20] The definitions set forth in Chapter 1 of Title 2 apply to the Local Agency Law, which comprises Subchapter B of Chapter 5 (relating to the practice and procedure of local agencies) and Subchapter B of Chapter 7 (relating to judicial review of local agency action) of Title 2.
[21] Taxpayers assert that the assessment notices are not of record. As Judge Levin noted, however, the record includes affidavits of Board officials indicating that such notices were sent. The affidavits were attached as exhibits to Appellants' surreply briefs, in the cases of Lincoln Realty and Airport Business Center, and to Appellants' response to Nine Penn Center's motion for summary judgment.
[22] If Taxpayers had attempted to pursue any of the courses of action suggested by Judge Levin, see Section 1, supra, we would consider whether such attempt constituted a timely challenge to the Board's initial decision. The viability of these alternatives is not before us, however, as Taxpayers pursued none of them.