# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| F.A. Realty Investors Corp. | : | |
| | : | |
| v. | : | No. 1728 C.D. 2017 |
| | : | Submitted: August 3, 2018 |
| Board of Revision of Taxes | : | |
| | : | |
| | : | |
| Appeal of: Steve A. Frempong | : | |

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**                     **FILED:  March 1, 2019**

Steve A. Frempong (Frempong), *pro se*, appeals from an order of the Court of Common Pleas of Philadelphia County (trial court), which quashed Frempong's appeal of a real estate market valuation.  For the foregoing reasons, we affirm.

In 2014, Frempong filed a request for a reduction of the proposed real estate market value (valuation appeal) of a certain piece of property located at 5800 North 17th Street, Philadelphia, Pennsylvania (the Property), owned by F.A. Realty Investors Corporation (F.A. Realty).  (Reproduced Record (R.R.) at 3a, 18a.) Frempong, a shareholder in F.A. Realty, does not own the Property in his individual capacity.  (*Id.*)  In December 2015, the Philadelphia County Board of Revision of Taxes (BRT) issued a decision, denying the valuation appeal.  (*Id.*)   Through

counsel, F.A. Realty appealed the BRT's decision to the trial court. Thereafter, Frempong filed a praecipe to intervene.

On January 30, 2017, the City of Philadelphia (the City) filed a motion (Omnibus Motion), seeking, *inter alia*, to quash the appeal and remove Frempong as a party to the appeal.[1] (*Id.* at 3a-7a.) The City sought to quash the appeal on two separate grounds. First, the City alleged that F.A. Realty lacked standing to bring the appeal of the BRT's decision to the trial court. Specifically, the City averred that F.A. Realty is not a corporation registered in the Commonwealth of Pennsylvania and, accordingly, F.A. Realty could not bring an action in a Pennsylvania court. (*Id.* at 4a.) Second, the City argued that the trial court lacked jurisdiction. In support of this assertion, the City maintained that Frempong lacked standing to file the underlying valuation appeal with the BRT because Frempong did not own the Property and, therefore, lacked standing to bring the valuation appeal. (*Id.* at 5a.) Based upon this, the City argued that the BRT's decision was a nullity. (*Id.*) Beyond quashing the appeal, the City sought Frempong's removal as a party due to his failure to properly intervene. (*Id.*)

Frempong filed a response to the Omnibus Motion. On the issue of whether F.A. Realty could bring an action in a Pennsylvania court due to its unregistered status, Frempong argued that F.A. Realty is a subsidiary of a corporation registered in Pennsylvania—F.A. Investment Group, L.L.C. (F.A. Investment Group). (*Id.* at 32a.) Accordingly, Frempong argued that F.A. Realty did not need to register. With respect to the City's allegation that Frempong lacked standing, Frempong argued that he had standing because he is a co-signor and

_____

[1] The City also sought to limit expert reports because F.A. Realty failed to timely provide the City with its list of expert reports.

2

obligor of a loan secured by the Property. (*Id.* at 26-27a.) Frempong also argued that, as a party to the proceedings below, he automatically was a party to the appeal to the trial court. (*Id.* at 29a.) Further, as the City did not raise the issue of standing before the BRT, Frempong alleged that the City waived the issue. (*Id.*) Frempong also challenged the Omnibus Motion on the ground of lack of notice and argued that the City failed to properly serve him with the Omnibus Motion. (*Id.* at 34a.)

Following Frempong's response, the docket reflects that the trial court issued an order, advising that it would hold a hearing on the Omnibus Motion on March 13, 2017, at 10:00 a.m. (Supplemental Reproduced Record (S.R.R.) at 12b.) On March 13, 2017—the date of the hearing—Frempong filed a supplemental memorandum of law in further response to the Omnibus Motion. The docket reflects that Frempong filed this memorandum at 9:53 a.m., less than ten minutes before the hearing was set to begin. (*Id.*) In this memorandum, Frempong argued that he had standing to bring the appeal due to his position as a taxpayer on the Property. (R.R. at 36a.) In support of this assertion, Frempong averred that he entered into an agreement with the City to pay the tax liens on the Property, and this agreement conferred standing upon him by implication, as he was a taxpayer aggrieved by the valuation. (*Id.*) Frempong further averred that he is a lessee of the Property and argued that his status as a lessee also granted him standing. (*Id.* at 37a.)

Following the hearing, the trial court granted the City's Omnibus Motion. (S.R.R. at 1b-2b.) In so doing, the trial court opined:

> [T]he Court GRANTS the City's [Omnibus Motion] to quash the appeal in its entirety as Mr. Frempong lacked standing to bring the underlying BRT appeal. Mr. Frempong admitted that F.A. Realty owns the Property and that he filed the underlying appeal only in his capacities as shareholder and loan co-signor and

3

guarantor. Those capacities, however, did not confer standing upon Mr. Frempong to file the appeal.

(*Id.* at 2b.) Frempong appealed the trial court's order to this Court. F.A. Realty did not appeal.[2]

Frempong argues that the trial court erred in concluding that he lacked standing to bring the valuation appeal before the BRT. In support, Frempong advances a myriad of legal theories. Specifically, Frempong asserts that he had standing: (1) due to his status as co-signor of a loan on the Property; (2) as a shareholder of F.A. Realty; (3) as the taxpayer of the Property; and (4) as lessee of the Property.[3]

---

[2] This Court's review of the trial court's order granting a motion to quash is limited to determining whether the trial court committed an error of law, an abuse of discretion, or a violation of constitutional rights. *Alma v. Monroe Cty. Bd. of Assessment Appeals*, 83 A.3d 1121, 1123 n.3 (Pa. Cmwlth. 2014). An abuse of discretion is not merely an error of judgment, but rather occurs when the law is overridden or misapplied in reaching a conclusion or the judgment is exercised "manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence of record." *Commonwealth v. Rucci*, 670 A.2d 1129, 1141 (Pa. 1996), *cert. denied sub nom. Rucci v. Pa.*, 520 U.S. 1121 (1997).

[3] Frempong also asserts that the City has waived the issue of standing. Due to the relationship between the BRT and the City and the function of the waiver rule, we conclude that the issue of standing is not waived even if it were not made in front of the BRT. *See Lincoln Phila. Realty Assocs. I v. Bd. of Revision of Taxes of City & Cty. of Phila.*, 758 A.2d 1178, 1186 (Pa. 2000). In *Lincoln Philadelphia Realty Associates I*, taxpayers asserted that the City waived any issues relating to the status of tax abatements because the City did not appear at any hearings in front of the BRT. Our Supreme Court, after evaluating the purpose of the waiver rule and the relationship between the City and the BRT, opined:

> By requiring that an issue be considered waived if raised for the first time on appeal, we ensure that the trial court or agency that initially rules on such matters has had an opportunity to consider the issue. Here, it is apparent, as [the City] suggest[s], that the [BRT] did not lack such opportunity.
>
> The [BRT] is a city office. The seven members of the [BRT] are appointed by a majority of the judges of the Court of Common Pleas for Philadelphia County, and their salaries are specified in the Philadelphia Code. With regard to real property, the [BRT] appoints assessors, divides the county into assessment districts and

4

In Pennsylvania, a party seeking judicial resolution of a controversy "must establish as a threshold matter that he has standing to maintain the action." *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009). Unlike the federal courts, which derive their standing requirements from Article III of the United States Constitution, standing for Pennsylvania litigants has been created judicially. *Id.* at 500 n.5. "[T]he core concept of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial resolution of his challenge." *Id.* (citing *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280-81 (Pa. 1975)).

Under Section 14 of the statute known as the First Class County Assessment Law (Assessment Law),[4] "[a]ny person aggrieved by any assessment . . . may file an appeal therefrom with the board." Pursuant to Section 10 of the Assessment Law,[5] an aggrieved party can also appeal from a valuation. In order to be aggrieved (and, therefore, have standing to appeal), a party

---

assigns assessors to those districts, establishes and maintains records of assessments, annually directs its assessors to value each parcel of realty within their respective districts, examines the valuations returned by the assessors and revises the assessments as necessary, prepares a statement of assessed values of all property for public inspection, and . . . notifies property owners of changes in assessments and hears appeals from such assessments. The City's Department of Collections bills taxpayers in accordance with the assessments certified to it by the [BRT]. In assessing property within the City, the [BRT] performs a function "upon which the entire fiscal system of Philadelphia is dependent . . . ." In addition, as counsel for the City stated at a hearing . . . , the City Solicitor "work[s] with the [BRT]." Given the [BRT's] role in municipal government, [t]axpayers cannot reasonably argue that the [BRT] was deprived of the opportunity to consider the arguments now being advanced by [the City].

*Id.* at 1186 (internal citations omitted).

[4] Act of June 27, 1939, P.L. 1199, *as amended*, 72 P.S. § 5341.14.

[5] 72 P.S. § 5341.10.

5

must show that it has a substantial, direct and immediate interest in the claim sought to be litigated. *William Penn Parking Garage*, 346 A.2d at 280. Our Supreme Court has defined these interests as follows:

> [A] "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law; a "direct" interest requires a showing that the matter complained of caused harm to the party's interest; an "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question.

*Pa. Med. Soc'y v. Dep't of Pub. Welfare*, 39 A.3d 267, 278 (Pa. 2012).

We begin with Frempong's assertion that he had standing as an aggrieved mortgage obligor and co-signor of a loan on the Property. In support thereof, he cites to Section 12 of the act commonly known as the Municipal Claims and Tax Liens Act (MCTLA),[6] which provides, in pertinent part, that "[a]ny person having an interest in the property, whensoever acquired, may . . . intervene as a party defendant and make defense thereto, with the same effect as if he had been originally named as a defendant in the claim filed." Frempong asserts that his status as a mortgage obligor and co-signor grants him an equitable interest in the property sufficient to confer standing to appeal.

While Frempong may have established standing to challenge a lien under Section 12 of the MCTLA, this valuation appeal is not a proceeding governed

---

[6] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7181.

6

by Section 12 of the MCTLA. Accordingly, Frempong's reliance on the MCTLA[7] to support standing in this valuation appeal is misplaced.

Further, Frempong's claimed status as "mortgage obligor and co-signor" on a loan on the property appears to be a misnomer. In claiming this status, Frempong points to an agreement that he signed with the City to pay delinquent real estate taxes on the Property to avoid a Sheriff's sale. (R.R. at 44a.) In this agreement, Frempong agreed to pay the outstanding real estate taxes on the Property for the tax years 2009-2013. (*Id.*) Frempong, however, did not enter into this agreement in his personal capacity. Instead, he entered into the agreement as "Steven Frempong, *agent for F.A. Investment Group Inc.*" (*Id.* (emphasis added).) During the hearing before the trial court, the parties discussed the implications of this agreement. The transcript reads as follows:

> [Trial Court]: All right. I understand. What about [Frempong's] argument that he's on the hook for the mortgage and, therefore, he has an interest?
>
> [City]: I would say that this is one of the many downsides of being a cosigner, Your Honor, is that you are on the hook for things that you have literally no control over. In his position as cosigner, he can't sell the property. He can't occupy the property without permission of the actual owner of the property. He doesn't have an ownership interest. He may be an obligor on this loan—and he may come to regret that some day, as many obligors have. But he is not an owner of this property and he is not responsible for the taxes.
>
> And, again, if he is willing to assume personal responsibility for these taxes, today until the end of time, I will withdraw any objection I have to him being an intervenor. But he's not responsible for them. And until he assumes that responsibility, he's not a party aggrieved by this.

---

[7] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101-7505.

7

[Trial Court]: I thought he said he had an agreement with the City.

[City]: The parent corporation has an agreement with the City.

[Trial Court]: Mr. Frempong personally does not?

[City]: Mr. Frempong paid the money out of his own pocket.

[Trial Court]: Does Mr. Frempong personally have an agreement with the City?

[City]: Not to my knowledge.

[Trial Court]: Mr. Frempong, do you personally have an agreement to pay the City in writing?

[Frempong]: That's correct. And, Your Honor—

[Trial Court]: Where is it?

[Frempong]: I don't know what you have there, but I have here my signature. I entered into [an] agreement [on] August 19, 2014.

[Trial Court]: Steven Frempong, agent for [F.A. Investment Group]. Is it your position that the City can sue you personally under this agreement and you will not object to that?

[Frempong]: No, because I've entered into [an] agreement. For that case, yes, I am obligated. And the City could have sued me at any point.

[Trial Court]: You are personally obligated under this agreement.

[Frempong]: That's correct, Your Honor.

[City]: Can we get a consent order to that effect, Your Honor?

[Frempong]: Your Honor, I've already paid 20,000 [dollars]. Why would he even say that I am not obligated?

[Trial Court]: Well, again, people pay taxes for all kinds of reasons, not necessarily obligating them. Why does it say on the cover page of [the agreement], Steven Frempong, agent for F.A. Investment Group, and not just Steven Frempong?

8

[Frempong]:   Your Honor, because, as I said, I am obligator of the mortgage.  So I was paying to protect my interest.  In case there's a foreclosure, I have to prevent foreclosure.

(3/13/17 Notes of Testimony (N.T.) at 29-32.)  While Frempong may have used his own money to pay the delinquent taxes pursuant to this agreement, he did not enter into this agreement in his personal capacity.  Thus, Frempong himself is not aggrieved by the valuation as a result of having entered into the agreement.  Accordingly, Frempong did not have standing through the agreement with the City.

Next, we must evaluate whether Frempong can claim an aggrieved status due to the fact that he is a shareholder of F.A. Realty.  While Frempong acknowledges the general rule that a corporation may not appear in court unless represented by counsel, he asserts that two exceptions exist to this general rule: (1) where a state has "established special small claims courts with informal rules of civil procedure in which corporate as well as individual litigants are required to appear without an attorney;" and (2) stockholder's derivative actions.  (Appellant's Br. at 11-12 (citing *Walacavage v. Excell 2000, Inc.*, 480 A.2d 281, 284 (Pa. Super. 1984).)  Frempong argues that he fits squarely within both exceptions.  These exceptions, however, are inapplicable here.  Whether or not an individual may represent a corporation has little importance to evaluating whether Frempong, in his individual capacity, had standing to bring the valuation appeal.  In both exceptions, the corporation is still the party, but it may be represented by someone other than counsel.

Further, we reject Frempong's attempt to couch the valuation appeal as a stockholder derivative action.  An appeal of a real estate market valuation is not the proper forum for a shareholder to bring a derivative suit. Stockholder derivative actions are governed by Pennsylvania Rule of Civil Procedure No. 1506, and the

9

record clearly reflects that Frempong has failed to comport with any of the provisions therein. Frempong does not cite to any authority that would support his assertion that a stockholder derivative action has any applicability to the matter at hand. Thus, the trial court correctly concluded that Frempong did not have standing to bring the valuation appeal by virtue of his status as a shareholder of F.A. Realty.

Frempong next argues that he was aggrieved by the valuation because he has assumed the tax payments on the Property. In so arguing, he again cites to the 2014 agreement with the City and asserts that, as the taxpayer on the Property aggrieved by the BRT's decision, he has standing. As previously mentioned, Frempong entered this agreement *as agent for F.A. Investment Group* and not in his personal capacity. (R.R. at 44a.) Black's Law Dictionary defines a "corporate agent" as "[a]n agent authorized to act *on behalf of a corporation*; broadly, all employees and officers who have the power to bind *the corporation*." Black's Law Dictionary 73 (9th ed. 2009) (emphasis added). Despite Frempong's insistence that the agreement served to bind him in his individual capacity to pay the outstanding taxes for the tax years 2009-2013, the agreement clearly signifies that Frempong bound F.A. Investment Group. Accordingly, as Frempong has no personal liability to pay the outstanding taxes, he cannot claim aggrieved status as a taxpayer.

Finally, we address Frempong's last assertion of aggrievement, wherein he claims that he leases part of the Property for his own business, and his status as a lessee provides him standing to challenge the valuation. Lessees of a property may, in certain circumstances, have standing to challenge a decision of the BRT. *See Bay Harbor Marina Ltd. P'ship v. Erie Cty. Bd. of Assessment Appeals*, 177 A.3d 406, 417 (Pa. Cmwlth. 2018) (holding that lessee had standing to challenge denial of tax immunity); *but see Marcus Hook Dev. Park, Inc. v. Bd. of Assessment Appeals of*

10

*Delaware Cty.*, 449 A.2d 70 (Pa. Cmwlth. 1982) (holding that lessee did not have standing to appeal assessment). Here, however, we need not evaluate whether the circumstances confer standing upon Frempong due to aggrieved status, because Frempong has failed to put forward any evidence to establish the existence of his status as a lessee.

At no time during the hearing before the trial court did Frempong aver that he had standing by virtue of being a lessee. Despite the fact that he filed his supplemental memorandum of law minutes before the hearing began, he never raised this argument or provided any evidence to establish the existence of a lease. Frempong merely continued to assert that his standing came from being aggrieved as the obligor of the mortgage, which he also failed to establish. Thus, Frempong cannot assert standing as an aggrieved lessee.

Accordingly, as Frempong failed to establish that the valuation aggrieved him, he did not have standing to file the valuation appeal. We, therefore, affirm the order of the trial court.[8]

P. KEVIN BROBSON, Judge

---

[8] As the Court affirms on this basis, we need not consider the trial court's alternative ground for quashing the appeal—*i.e.*, that F.A. Realty was not permitted to appeal the BRT's decision because it failed to register with the Department of State.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

F.A. Realty Investors Corp.       :
                                   :
             v.                 :    No. 1728 C.D. 2017
                                   :
Board of Revision of Taxes       :
                                   :
                                   :
Appeal of: Steve A. Frempong     :

## **O R D E R**

AND NOW, this 1st day of March, 2019, the order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

 

 

                                                _____
                                                P. KEVIN BROBSON, Judge